COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Willis and Fitzpatrick
Argued at Alexandria, Virginia


J. P.
                                        OPINION BY
v.      Record No. 1168-96-4   JUDGE JOHANNA L. FITZPATRICK
                                         MAY 13, 1997
CLARENCE CARTER, COMMISSIONER OF THE
 VIRGINIA DEPARTMENT OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                  Benjamin N. A. Kendrick, Judge

            Kenneth H. Rosenau (Rosenau & Rosenau, on
            brief), for appellant.

            Gaye Lynn Taxey, Assistant Attorney General
            (James S. Gilmore, III, Attorney General;
            William H. Hurd, Deputy Attorney General;
            Siran S. Faulders, Senior Assistant Attorney
            General, on brief), for appellee.



     J. P. (appellant) appeals the trial court's decision

affirming the Department of Social Services' (DSS) determination

of "founded sexual abuse."  On appeal, she contends that the

trial court erred in:  (1) failing to find that her

constitutional due process rights were violated by the procedures

used by DSS in the submission of her name to the central registry

as a "founded" sexual abuser; (2) failing to subpoena additional

witnesses and documents to reconstruct and supplement the

administrative record as she requested; (3) preventing appellant

from raising additional errors not designated in her petition for

appeal; and (4) finding that the "Juvenile and Domestic Relations

Courts law" does not conflict with or supersede the Child Abuse

and Neglect Act.  For the following reasons, we affirm the

decision of the trial court.

BACKGROUND

On Saturday, May 8, 1993, the Arlington County Police Department received a report that two children had been sexually molested by appellant, their thirteen-year-old baby-sitter. Arlington Police Officer McLeran responded, interviewed the children and their parents, and filed a police report. The report included claims that appellant conducted satanic rituals, used a "magic" crystal and a "magic" ring, as well as allegations of statutory rape, sodomy, and aggravated sexual battery.

Detective Kyle, also of the Arlington County Police, received the report on May 10, 1993, and referred this information to DSS. David Romer (Romer), the DSS social worker assigned to the case, conducted the investigation on behalf of DSS.[1] On May 11, 1993, as part of the criminal investigation,

---

[1]There are three steps in the administrative process of investigating claims of child abuse: (1) the "initial determination," (2) the "local conference," and (3) the appeal before the Commissioner.

(1)  The "initial determination"
      First, after a complaint is filed, a representative of the department investigates the complaint and makes an initial determination of whether there is clear and convincing proof of abuse. If a complaint is deemed "founded" or "reason to suspect," the alleged abuser may appeal the determination to the local director of the department.

(2)  The "local conference"
      In this first appeal proceeding, called the "local conference," the local director must determine whether the record [shall] be amended. Finally, in the last stage of the

Detective Kyle contacted appellant's mother (Ms. P.) to arrange for an interview with her and appellant. Later that day, Detective Kyle left a message with Romer informing him that Ms. P. chose to consult with an attorney prior to allowing appellant to be interviewed. The record reflects that Romer did not contact appellant prior to making the initial disposition because he had been informed by Detective Kyle that "there [were] criminal proceedings of the charges made at that point and time. The decision had already been made by [appellant's] mom to retain an attorney for [appellant], [and] not to meet with Det. Kyle."[2] Romer assumed that because appellant's attorney would not allow appellant to be interviewed by the police in the criminal investigation, neither would the attorney allow her to be interviewed by him in the parallel DSS investigation. It is

_____

> appeal process, the alleged abuser may request a hearing before the Commissioner.
>
> (3) Appeal before the Commissioner (or hearing officer)
> Here the alleged abuser must prove by a preponderance of the evidence that the record should be amended because it contains information which is irrelevant or inaccurate.

See Turner v. Jackson, 14 Va. App. 423, 428 n.4, 417 S.E.2d 881, 885 n.4 (1992) (citing Protective Services Manual, Vol. VII, Sec. III, Chap. A at 56-60).

[2]On May 17, 1993, appellant was criminally charged with two counts of aggravated sexual assault. On July 15, 1993, a hearing was held in the Arlington County Juvenile and Domestic Relations District Court on the criminal charges, and appellant entered an Alford plea to one charge of sexual battery. This conviction is not at issue in the instant case.

undisputed that Romer made no attempt to contact appellant directly during his initial investigation, and that the only contact he had with appellant was at the "local appeal hearing."

On May 20, 1993, Romer mailed a letter to appellant that included the following information:

> On 5-10-93, Child Protective Services received a report of alleged child abuse and/or neglect regarding the above-named child(ren).
>
> As a result of that report the following allegations are being investigated: sexual abuse of children.
>
> If you have any questions concerning this investigation, please call me at (703) 358-5100.

Romer's initial investigation consisted of a review of the police reports of the incidents and the taped interviews with the children, their mother, and Detective Kyle. In a letter dated June 1, 1993, Romer issued the initial disposition of the allegations implicating appellant:

> Following an investigation of the complaint, it has been determined that this case will be submitted to the State Central Registry as <u>Founded, Level 1: Sexual Molestation</u>, with a "high" risk assessment noted.
>
> Your name will be registered as the abuser with the Commonwealth of Virginia, Department of Social Services, Child Abuse and Neglect Central Registry, where it will remain for eighteen (18) years past the date of the above-noted complaint.

Romer concluded that "[i]ntervention [was] necessary to protect these children and other potential victims," and informed

- 4 -

appellant of her appeal rights. With this letter, Romer enclosed a child protective services pamphlet that explained the definitions of abuse and neglect and the appeal process.

Following Romer's initial disposition, a local conference was held pursuant to appellant's request. The conference took place on July 21, 1993 with Barbara Glaser (Glaser), the Chief of DSS, presiding. Appellant, her mother, and Romer were present at the conference. Appellant was given the opportunity to present evidence regarding the allegations and chose to do so. She denied committing the alleged sexual abuse, being involved in satanic rituals, making any statements referencing Satan, or playing any of the "games" with the exception of the "bat game." Ms. P. expressed the concern that perhaps another baby-sitter had committed the abuse.

By letter dated July 21, 1993, Glaser informed Ms. P. that "[d]uring our conference, nothing was said that would lead me to alter Mr. Romer's finding of Sexual Molestation by your daughter, [appellant], of [the children]. The disposition, therefore, remains Founded, Level I: Sexual Molestation." Ms. P., on behalf of appellant, appealed Glaser's decision to the Commissioner pursuant to Code § 63.1-248.6:1(C).

Jody E. Holyst (Holyst), a State Hearing Officer, informed Ms. P. by letter of the purpose of the final administrative hearing:

> [You may] appeal information in the record which is inaccurate or irrelevant. You may also appeal the disposition(s) of the

- 5 -

allegation of abuse or neglect.

\* \* \* \* \* \* \*

<u>You have the right to present additional
information and witnesses at the hearing in
order to support your request for an
amendment to your record.</u>

(Emphasis added.)

The final administrative appeal before the designated hearing officer was conducted on December 10, 1993, was recorded, and appellant was represented by counsel.  Appellant and her mother testified regarding the abuse allegations.  Appellant denied abusing or touching the children inappropriately or engaging in satanic rituals.  Appellant argued that the initial agency finding dated June 1, 1993 deprived her of her right to due process of law, and that the "punishment" under the "Child Abuse and Neglect Act" was inconsistent with the "letter and intent of the 'Juvenile Justice Act.'"

> Romer testified, in part, that the children:
> [R]eported to their parents that [appellant]
> had undressed and fondled [one child] on
> these two different occasions, performed oral
> sodomy, had [him] touch her breast and sat on
> top of [him] and quote "hurt his penis."
> [Appellant] allegedly had [the other child]
> draw a pentagram and circle and told [him]
> this is where to love Satan while she fondled
> his penis. . . . [The children's mother] said
> the boys reported that [appellant] talked of
> Satan's power and that she would kill them
> and their parents if they told anyone what
> happened.

Romer further testified that, in reaching the initial disposition of the allegations, he relied on two interviews, "the first

– 6 –

completed by Det. Kyle on the 10th of May and then another joint interview with Det. Kyle, myself with the [children] on the 20th of May."

By letter dated January 31, 1994, Holyst sustained the previous disposition and found "that the record contains <u>clear and convincing evidence</u> that the abuse occurred and that it was committed by the Appellant." (Emphasis added.) Moreover, Holyst found that appellant "failed to meet her burden of proving by a preponderance of the evidence that information contained in the agency record is either irrelevant or inaccurate," thus requiring a change in the disposition. Accordingly, Holyst affirmed Romer's conclusion of "founded Sexual Abuse Level One" of the two children.

Appellant filed a notice and petition for appeal in the Circuit Court of Arlington County on February 28, 1994 and March 28, 1994, respectively. Appellant also filed two requests for subpoenas <u>duces</u> <u>tecum</u> in order to supplement the DSS administrative record.[3] In response, DSS filed a motion to quash the subpoenas and a motion to preclude the taking of additional evidence. The trial court granted DSS' motion to quash and made the following findings:

> The Court, having reviewed Appellee's motion, Appellant's response and the

---

[3] The subpoenas required Romer and Holyst to attend the September 20, 1995 hearing, required Holyst to bring her original tape of the December 10, 1993 hearing, and required Romer to bring all records relating to appellant, including all correspondence to her.

authorities cited, concludes that Pursuant to Va. Code § 9-6.14:15 <u>et seq.</u> and Rule 2A of the Rules of the Supreme Court of Virginia, subpoenas may not be issued in an appeal under Va. Code § 9-6.14:15 <u>et seq.</u>  Moreover, the Court's review is confined to the Record of Proceedings filed by the Appellee and the Court cannot hear new evidence.  Therefore, Appellant may not call witnesses nor present additional evidence at the hearing on the merits scheduled for September 20, 1995. Further, the Court concludes that pursuant to Va. Code § 9-6.14:15 <u>et seq.</u> and Rule 2A of the Rules of the Supreme Court of Virginia, the Appellant must designate the errors assigned in the Petition for Appeal, and having done so, shall be precluded from raising additional errors not so designated.

The trial court heard the appeal on the merits on September 20, 1995.  By order dated April 18, 1996, the court found that appellant had not been denied due process and had failed to meet her burden of proof under Code § 9-6.14:17 to demonstrate an error of law as described in her petition for appeal. Additionally, the court affirmed the DSS' finding of "founded sexual abuse."  Specifically, the court ruled as follows:

[A] remand is not necessary because the record is complete and contains a statement by David Romer that he did not interview [appellant] prior to making the initial determination because he was informed that [she] would not speak with the police about a companion criminal case and he assumed that she would not speak with him as well because of the risk of self incrimination.

. . . [Appellant] had two opportunities to appear at the local conference and the hearing conducted by the Virginia Department of Social Services ("DSS") and that she did in fact appear at the local conference and at the DSS hearing and was represented by counsel; that David Romer's failure to contact [appellant] before making the initial

- 8 -

determination of "founded sexual abuse" did not deny [appellant] due process, but rather was a failure to follow procedure which was harmless error under Va. Code 9-6.14:17, and

. . . appellant has failed to meet her burden under Va. Code 9-6.14:17, to demonstrate an error of law, as described in her petition for appeal, it is hereby

. . . ORDERED . . . that the finding of "founded sexual abuse" regarding [J. P.] . . . in the Virginia Department of Social Services is AFFIRMED. . . .

## I. DUE PROCESS

Appellant contends that by entering a "founded" disposition at the initial determination without first allowing her to confront her accusers and defend herself, DSS deprived her of her constitutional due process rights. She argues that Romer was required to speak with her prior to making his initial evaluation of the complaint. Additionally, appellant claims that the danger of future disclosure and the possible dissemination of her status as a "founded" abuser may have a negative impact on her reputation and adult livelihood.

"The Fourteenth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty or property without due process of law." Jackson v. W., 14 Va. App. 391, 405, 419 S.E.2d 385, 393 (1992). A due process analysis involves a two-part inquiry. First, a deprivation of a liberty or property interest must be shown. "Then, '"[o]nce it is determined that due process applies, the question remains what process is due."'" Id. at 406, 419 S.E.2d at 393-94 (quoting

Morrissey v. Brewer, 408 U.S. 471, 481 (1972)) (citing Klimko v. Virginia Employment Comm'n, 216 Va. 750, 754, 222 S.E.2d 559, 563, cert. denied, 429 U.S. 849 (1976)); see also Turner v. Jackson, 14 Va. App. 423, 436, 417 S.E.2d 881, 890 (1992).

In a similar case, we determined that the DSS procedure and the nature of the agency's determination of "founded" require this due process analysis. See Jackson, 14 Va. App. 391, 419 S.E.2d 385. In that case, we held that "[DSS'] primary purpose is to investigate complaints of child abuse and, when necessary, provide appropriate services for the child or family. However, to perform its function, the department issues a binding determination that a party did abuse a child." Id. at 408, 419 S.E.2d at 395. Thus, we concluded that the purpose of DSS was not purely investigative; rather, the purpose may also be construed as adjudicative. Accordingly, we held that both parts of the due process test must be evaluated.

A. The Nature of the Process

Appellant's first contention, that she was deprived of due process because Romer failed to contact her prior to entering the initial determination of "founded," is without merit. Nothing in Code §§ 63.1-248.6 or 63.1-248.6:1 requires notice or an opportunity to be heard prior to the initial determination. While it is clearly preferable for an investigating official to contact the accused and any interested party, it is not a prerequisite to a valid determination. As in the instant case,

there may be circumstances where contact is impractical or impossible. Rather, appellant is given the right to appeal this first determination.

> A person who is suspected of or is found to have committed abuse or neglect may, within thirty days of being notified of that determination, request the local department rendering such determination to amend the determination and the local department's related records. . . . The local department shall hold an informal conference or consultation where such person, who may be represented by counsel, shall be entitled to informally present testimony of witnesses, documents, factual data, arguments or other submissions of proof to the local department. . . . If the local department refuses the request for amendment or fails to act within forty-five days after receiving such request, the person may, within thirty days thereafter, petition the Commissioner, who shall grant a hearing to determine whether it appears, by a preponderance of the evidence, that the determination or record contains information which is irrelevant or inaccurate regarding the commission of abuse or neglect by the person who is the subject of the determination or record and therefore shall be amended. Rather, the Code allows the appellant the right to appeal the initial determination.

Code § 63.1-248.6:1(A).

In the instant case, Romer was advised by the detective who was investigating the related criminal charges that appellant's attorney would not allow her to be interviewed. Appellant received written notification of the investigation on May 20, 1993. Although Romer did not contact her directly, neither did appellant attempt to contact him after notification. Romer advised appellant of the initial disposition by letter dated June

- 11 -

1, 1993.  Appellant appealed that disposition to the local director and then to the Commissioner.  Because appellant received a timely notice of the initial determination, exercised the two opportunities granted by Code § 63.1-248.6:1 to appeal, was represented by counsel, and presented evidence at the hearings, she was allowed an adequate opportunity to present evidence.  See Jackson, 14 Va. App. at 412, 419 S.E.2d at 397.  Accordingly, we hold that appellant was given adequate notice and opportunity to be heard.

## B.  Future Harm

Next, appellant argues that the danger of future disclosure and dissemination of her status may impact negatively on her adult livelihood as well as on her good name, reputation, honor, and integrity.  However, appellant points to no actual harm caused to her by the DSS procedure nor does she identify any specific deprivation of a right protected by the Due Process Clause.

In the case at bar, appellant contends that she has property interests in future employment, her reputation, the right to own and operate a nursing home, the right to own, operate, and/or work at a child care center, the right to be an adoptive and/or foster parent, and that these rights are entitled to protection under the Due Process Clause.  Thus, appellant argues that "[g]iven the imminent, indeed inevitable, likelihood of disclosure and dissemination, [she] suffers a stigma and loss of

tangible interests of constitutional proportion."

In <u>Jackson v. W.</u>, W.'s allegations of future deprivation closely resembled those of appellant's in the instant case.  In <u>Jackson</u>, appellant argued that DSS' disposition would expose him to criminal prosecution, prevent him from being a foster or adoptive parent, prevent him from owning, operating or working in a nursing home or child care center, damage his reputation, and claimed that the danger of future disclosure would impact his career and livelihood negatively.  <u>See</u> <u>Jackson</u>, 14 Va. App. at 409, 419 S.E.2d at 395.  However, we held that W. suffered no deprivation of any right protected by the Due Process Clause. Rather, we found W.'s contentions to be "speculative" at best:

> "That any of these consequences will result is purely conjectural.  There is nothing in the record to indicate that such will be the case . . . . However, even if such collateral consequences were to flow from the [agency's] investigations, they would not be the result of any affirmative determinations made by the [agency], and they would not affect the legitimacy of the [agency's] investigative function."

<u>Id.</u> at 409, 419 S.E.2d at 395-96 (quoting <u>Hannah v. Larche</u>, 363 U.S. 420, 443 (1960)).

This rationale applies equally to the instant case. "Because [appellant] has not identified any actual loss, and merely speculates that these adverse consequences could possibly result at some later date, [s]he has failed to claim a deprivation under the Fourteenth Amendment."  <u>Turner</u>, 14 Va. App.

at 438, 417 S.E.2d at 891.

II.   THE RECORD ON APPEAL

Appellant next argues that the trial court erred in denying her the opportunity to reconstruct and to supplement the record to be considered at her appeal to the circuit court.  She contends:  (1) that the transcript of the December 10, 1994 administrative appeal hearing was incomplete and that she should have been allowed to reconstruct the "missing portion," and (2) because she obtained relevant evidence after the agency proceedings were concluded, she should have been allowed to add this information to the record.

In response to DSS' motion to quash and to preclude the taking of evidence before the trial court, appellant argued that the transcript required reconstruction because it "[was] replete with omissions which were found by the Court Reporter to be inaudible," and that the missing evidence included testimony by Romer conceding that he did not feel the notice was adequate. Additionally, she attempted to supplement the record with new testimony of a psychologist indicating that appellant was incapable of committing the alleged abuse.  Lastly, appellant desired to present evidence to challenge the legality of DSS' review, including the hearing officer's qualifications.

The trial court found, regarding appellant's request to supplement and reconstruct the record, that:
> [P]ursuant to Va. Code § 9-6.14:15 <u>et seq.</u>
> and Rule 2A of the Rules of the Supreme Court
> of Virginia, subpoenas may not be issued in

- 14 -

an appeal under Va. Code § 9-6.14:15 et seq.
Moreover, the Court's review is confined to
the Record of Proceedings filed by the
Appellee and the Court cannot hear new
evidence.

We agree. The agency decision is reviewable pursuant to Rule

2A:4 and Code § 9-6.14:17. Rule 2A:4(b) of the Rules of the

Supreme Court of Virginia provides that:
The petition for appeal shall designate the
regulation or case decision appealed from,
specify the errors assigned, state the
reasons why the regulation or case decision
is deemed to be unlawful and conclude with a
specific statement of the relief requested.

(Emphasis added.) Moreover, Code § 9-6.14:17 states, in

pertinent part, as follows:
The burden shall be on the party complaining
of agency action to designate and demonstrate
an error of law subject to review by the
court. . . . When the decision on review is
[] to be made on [the] agency record, the
duty of the court with respect to issues of
fact is limited to ascertaining whether there
was substantial evidence in the agency record
upon which the agency as the trier of facts
could reasonably find them to be as it did.
. . . Whether such fact issues are reviewed
on the agency record or one made in the
review action,[4] the court shall take due
account of the presumption of official
regularity, the experience and specialized
competence of the agency, and the purposes of
the basic law under which the agency has
acted.[5]

_____

[4]Because an agency record exists in the instant case, the
trial court was not required to construct a record in its review.

[5]The Revisers' Note to this section clarifies the court's
scope of review:

The reference to the evidential record
confines the court to the agency record as to
the facts where constitutional or statutory

(Emphasis added.)   See also State Bd. of Health v. Godfrey, 223

Va. 423, 433, 290 S.E.2d 875, 880 (1982).

Further,
> "[t]he sole determination as to factual
> issues is whether substantial evidence exists
> in the agency record to support the agency's
> decision.  The reviewing court may reject the
> agency's findings of fact only if,
> considering the record as a whole, a
> reasonable mind would necessarily come to a
> different conclusion."  When reviewing
> factual issues, the court must take into
> account "the presumption of official
> regularity, the experience and specialized
> competence of the agency, and the purposes of
> the basic law under which the agency has
> acted."  "In this context, Code § 9-6.14:17
>
> provisions in effect make the agency the
> trier of fact . . . . In those cases,
> moreover, the court is further limited by the
> next sentence and the last sentence of this
> section.
>
> The reference to the agency record, where the
> agency is the trier of the facts, merely puts
> in statutory form the "substantial evidence"
> rule long adhered to by courts in reviewing
> agency action.

(Emphasis added.)

In an earlier case, we explained the rationale underlying this code section:

> The trial court reviews the facts of the case
> as determined by the [agency] because it is
> required to determine as a matter of law
> whether there is substantial evidence to
> support the Commissioner's decision.  The
> substantial evidence rule gives stability and
> finality to the fact-finding of the
> administrative agency.

Roanoke Memorial Hospitals v. Kenley, 3 Va. App. 599, 610, 352 S.E.2d 525, 531 (1987) (emphasis added).

clearly mandates that agency findings of fact are to be accorded great deference under the substantial evidence standard of review."

A case subject to the standard of review outlined in Code § 9-6.14:17 [and] . . . the factual issues on appeal [therein] are <u>controlled solely by the agency record. The reviewing court is not free to take additional evidence, even at the request of one of the parties.</u> Therefore, under the VAPA, the circuit court's role in an appeal from an agency decision is equivalent to an appellate court's role in an appeal from a trial court. In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal.

<u>School Board v. Nicely</u>, 12 Va. App. 1051, 1061-62, 408 S.E.2d 545, 551 (1991) (citations and footnote omitted) (emphasis added). Thus, in an agency appeal, the circuit court is not free to take additional evidence at the request of one of the parties, but is obliged to defer to the trier of fact. <u>See</u> <u>Jackson</u>, 14 Va. App. at 400-01, 419 S.E.2d at 390; <u>Turner</u>, 14 Va. App. at 430-31, 417 S.E.2d at 886.

In the instant case, substantial evidence supports the factual findings of DSS. The record contains the written decision of the hearing officer, the transcript of the hearing, all documents relied upon by Romer in making the initial determination, the notices from DSS to appellant regarding appellant's agency appeals, and the certification of authenticity of the record. Accordingly, we hold that the trial court properly disallowed appellant's addition of evidence not presented at the agency level pursuant to Code § 9-6.14:17.

III. SUBJECT MATTER JURISDICTION

Next, appellant contends that the trial court erred in failing to rule that Holyst, the designated hearing officer, was unqualified to act and therefore her decision was void. Although appellant failed to raise this issue in her petition for appeal to the circuit court, she argues that the issue is one of subject matter jurisdiction and thus can be raised at any time. We disagree.

"[O]bjections to subject matter jurisdiction may be raised at any time and are not waivable." Owusu v. Commonwealth, 11 Va. App. 671, 672, 401 S.E.2d 431, 431 (1991). Additionally, "a judgment is void ab initio [] if it 'has been . . . entered by a court that did not have jurisdiction over the subject matter or the parties.'" Parrish v. Jessee, 250 Va. 514, 521, 464 S.E.2d 141, 145 (1995) (quoting Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987)).

DSS was required to make a determination of "founded" or "unfounded" pursuant to Code § 63.1-248.6, which provides in pertinent part as follows:

> The local department shall be the public agency responsible for receiving and investigating complaints and reports . . . .
>
> *   *   *   *   *   *   *
>
> (E) The local department shall upon receipt of a report or complaint:
>
> 1. Make immediate investigation;
>
> 2. When investigation of a complaint reveals cause to suspect abuse or neglect,

- 18 -

complete a report and transmit it forthwith to the central registry;

* * * * * * *

6. Send a follow-up report based on the investigation to the central registry within fourteen days and at subsequent intervals to be determined by Board regulations;

7. Determine within forty-five days if a report of abuse or neglect is founded or unfounded and transmit a report to such effect to the central registry and to the person who is the subject of the investigation. . . .

Thus, DSS had original jurisdiction to make the determination of "founded" in the instant case. Once appellant exhausted her administrative appeals under Code § 63.1-248.6:1, she appealed the agency's determination to the circuit court.

The circuit court unquestionably had appellate jurisdiction over this appeal of the agency's determination of "founded" pursuant to Code § 63.1-248.6:1(B) ("If aggrieved by the decision of the hearing officer, such person may obtain further review of the decision in accordance with Article 4 (§ 9-6.14:15 et seq.) of the Administrative Process Act.") and Code § 9-6.14:16(A) ("Any person affected by and claiming the unlawfulness of a case decision, . . . shall have a right to the direct review thereof by an appropriate and timely court action . . . ."). Both DSS and the circuit court properly exercised subject matter jurisdiction, and appellant's argument is without merit.

Moreover, any possible defect in Holyst's qualifications as a DSS hearing officer is procedural in nature. The Virginia

- 19 -

Supreme Court has distinguished subject matter jurisdiction from

other procedural defects as follows:

> The term jurisdiction embraces several concepts including subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies; . . . and "the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree."
>
> While these elements are necessary to enable a court to proceed to a valid judgment, there is a significant difference between subject matter jurisdiction and the other "jurisdictional" elements. Subject matter jurisdiction alone cannot be waived or conferred on the court by agreement of the parties. A defect in subject matter jurisdiction cannot be cured by reissuance of process, passage of time, or pleading amendment. . . .
>
> Even more significant, the lack of subject matter jurisdiction can be raised at any time in the proceedings, even for the first time on appeal by the court sua sponte. In contrast, defects in the other ["]jurisdictional["] elements will be considered waived unless raised in the pleadings filed with the trial court and properly preserved on appeal.
>
> One consequence of the non-waivable nature of the requirement of subject matter jurisdiction is that attempts are sometimes made to mischaracterize other serious procedural errors as defects in subject matter jurisdiction to gain an opportunity for review of matters not otherwise preserved.

Morrison v. Bestler, 239 Va. 166, 169-70, 387 S.E.2d 753, 755-56

(1990) (citations omitted). "'While the procedural requirements

of the statute and the charters in this regard [may be] mandatory and compliance with them is necessary, they should not be regarded as jurisdictional.'" Id. at 173, 387 S.E.2d at 755-56 (quoting City of South Norfolk v. Dail, 187 Va. 495, 503, 47 S.E.2d 405, 408-09 (1948) (discussing notice requirements for medical malpractice claims). Failure to comply with the procedure at issue in the instant case did not divest either the agency or the circuit court of subject matter jurisdiction. Accordingly, appellant's failure to raise at the agency level the procedural issue of Holyst's competence and her failure to designate this argument in her petition for appeal preclude her from raising the issue on appeal.

IV.   THE JUVENILE AND DOMESTIC RELATIONS COURTS LAW and

THE CHILD ABUSE AND NEGLECT ACT

Lastly, appellant contends that the "additional punishment" of the "possibility that a child will be listed in the registry and thus endure a stigma that will outlast their criminal record . . . is excessive and conflicts with the Juvenile Justice Act." Thus, she argues, the purpose of Code § 16.1-226 et seq. (the juvenile law) conflicts with and supersedes those contained in Code § 63.1-248.1 et seq. (the Child Abuse and Neglect Act, or the Act).   However, we find no such conflict.

The General Assembly clearly stated the purpose of the juvenile and domestic relations court law as follows:

> This law shall be construed liberally and as remedial in character, and the powers hereby conferred are intended to be general to effect the beneficial purposes herein set forth.  It is the intention of this law that in all proceedings the welfare of the child and the family, the safety of the community and the protection of the rights of victims are the paramount concerns of the Commonwealth . . . .
>
> *     *     *     *     *     *     *
>
> 2.  To provide judicial procedures through which the provisions of this law are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other rights are recognized and enforced;
>
> *     *     *     *     *     *     *
>
> 4.  To protect the community against those acts of its citizens, both juveniles and adults, which are harmful to others and to reduce the incidence of delinquent behavior and to hold offenders accountable for their behavior.

- 22 -

Code § 16.1-227. This language manifests the legislature's intent to balance the interests of the juvenile offender with those of the community. Thus, the statute provides for a juvenile charged with a criminal offense to be, inter alia, tried for such offense and to be punished accordingly, as well as providing services to the child and family.

The statutory mandate of the Child Abuse and Neglect Act is markedly different. Code § 63.1-248.1 sets forth the policy of the Act as follows:

> The General Assembly declares that it is the policy of this Commonwealth to require reports of suspected child abuse and neglect for the purpose of identifying children who are being abused or neglected, of assuring that protective services will be made available to an abused or neglected child in order to protect such a child and his siblings and to prevent further abuse or neglect, and of preserving the family life of the parents and children, where possible, by enhancing parental capacity for adequate child care.

See Jackson v. Marshall, 19 Va. App. 628, 631, 454 S.E.2d 23, 25 (1995) (quoting Jackson v. W., 14 Va. App. 391, 400, 419 S.E.2d 385, 390 (1992)).

DSS' primary purpose is "to investigate complaints of child abuse and, when necessary, provide appropriate services for the child or family." Jackson, 14 Va. App. at 408, 419 S.E.2d at 395. Notably, the purpose of the Act is not one of punishment and correction of the alleged abuser. Rather, under this statute, the policy of protecting abused children and preventing

further abuse of those children is key.  Id. at 402, 419 S.E.2d at 391.  Although appellant interprets her inclusion in the registry as punitive, we disagree.  Any possible aspect of punishment is merely ancillary to the primary purpose the registry serves, which is to protect the abused child and the community from offenders.

Appellant expresses particular concern about the confidentiality aspect of the central registry.  She correctly states that, regarding the confidentiality of the records of juvenile offenders, the policy in Virginia is to restrict the use of juvenile court records and to "preserv[e] a juvenile offender's anonymity as expressed in Virginia's juvenile law." Lavinder v. Commonwealth, 12 Va. App. 1003, 1007, 407 S.E.2d 910, 912 (1991).  However, we do not find this policy to be at odds with the policy of maintaining the central registry under the Child Abuse and Neglect Act.

Included in the duty of "maintain[ing] a central registry of all cases of child abuse and neglect within the Commonwealth" is the requirement "[t]o provide for methods to preserve the confidentiality of all records in order to protect the rights of the child, his parents or guardians."  Code § 63.1-248.7(K) and (L) (emphasis added).  To further the ends of protecting confidentiality, the General Assembly provided that "[t]he information contained in the central registry shall not be open to inspection by the public."  Code § 63.1-248.8.  Thus, "no

reasonable likelihood exists that this information would become available to [the public]." Jackson, 14 Va. App. at 409, 419 S.E.2d at 396. Because "the statute expressly provides for the confidentiality of all records or files compiled during the investigation, and the data stored in the Computerized Central Registry, . . . information concerning [a defendant's] abusive conduct is not generally available to the public." Id. at 409-10 n.14, 419 S.E.2d at 396 n.14. Accordingly, we do not find confidentiality to be an irreconcilable issue between the juvenile law and the Act.

The administrative proceedings under the Act are not criminal in nature and are not intended to punish or rehabilitate the abuser. The inclusion of appellant's name in the central registry is an administrative remedy to combat the danger identified by the General Assembly in the Act. The department has no authority to bring additional criminal charges, and "[t]he Commissioner cannot find [appellant] guilty of criminal child abuse. If [she] is to be found guilty of criminal child abuse, a court must make that finding beyond a reasonable doubt." Turner, 14 Va. App. at 438, 417 S.E.2d at 891.

The two statutory enactments are not mutually exclusive. Clearly, both statutes may apply to the same juvenile. Although the purposes and policies of the statutory enactments may be different, they are not disharmonious. The listing of a juvenile in the central registry once he or she is found to be an abuser

serves the mandated statutory purpose of protecting all children. Accordingly, these two legislative enactments appropriately balance the interests of the accused juvenile, the abused children, and the community. Confidentiality is reasonably maintained under both enactments. We can find no legitimate rationale for appellant's contention that the mandates of the Child Abuse and Neglect Act are superseded by those outlined in the juvenile law. For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>
