## CIRCUIT COURT OF THE CITY OF NORFOLK

Russell Carter

v.

Virginia Board
of Medicine

March 1, 2001

Case No. (Chancery) C99-2197

BY JUDGE JOHN C. MORRISON, JR.

This matter comes before the Court on Petitioner Carter's Petition for Appeal following the Virginia Board of Medicine's decision not to reinstate Dr. Carter's license to practice medicine in the State of Virginia. Dr. Carter had been previously charged with certain things but was exonerated of those charges. The following facts are reflected in the record. Dr. Carter's license was initially revoked in response to the Board finding that Dr. Carter had indiscriminately prescribed controlled substances, that he had failed to record history and results of examinations and diagnoses, and that he had been prescribing controlled substances for three years without a DDA certificate. Transcript of Russell Carter's Hearing at 8; Commonwealth's Exhibit 6, "Formal Hearing Exhibit Board History." The Board found that Dr. Carter conducted his practice in a way that endangered the health and welfare of his patients and also the public. On November 27, 1989, the Board decided to revoke Dr. Carter's medical license. The Board, however, stayed their own order of revocation on a number of terms. Those terms included: (a) a prohibition on Dr. Carter's prescribing certain controlled substances; (b) a

requirement that his practice be supervised; (c) a mandate that he complete a course in proper prescribing; and (d) a requirement that within *one year* of entry of the 1990 Order, Dr. Carter take and pass the Special Purpose Examination ("SPEX"). Dr. Carter appealed that decision to the Norfolk Circuit Court, which was upheld in 1991. The Virginia Court of Appeals also affirmed the Court and the Board's decision. Dr. Carter filed a Petition with the Virginia Supreme Court, which writ was denied in 1993.

In February 1992, Dr. Carter appeared for a formal administrative hearing before the Board based on an allegation that he had taken the SPEX three different times and failed each time. Therefore, the allegation was that he had failed to comply with the Board's 1990 Order. By order dated February 27, 1992, the Board did find Dr. Carter in violation of the order but again continued his license and allowed him another year to attain a passing score. Dr. Carter stated that the reason for his failure might have been due to a learning disability. The Board agreed to continue final disposition of the case until early 1994 in order for Dr. Carter to obtain an appropriate evaluation to determine if he did in fact have a learning disability. The report of this evaluation concluded that he did not have any learning disability. Based upon this information and the fact that Dr. Carter had taken the SPEX eight times and failed each time, the Board lifted its stay and revoked his license on February 28, 1994. Dr. Carter appealed that decision, but that appeal was dismissed because it was not properly perfected in accordance with the Virginia Code. Thereafter, if Dr. Carter wanted to reinstate his license, he could do so by demonstrating to the Board that he was competent to resume practice.

Dr. Carter later completed an informal didactic exposure experience at Norfolk Community Hospital (which he refers to as a "mini-residency") and sought reinstatement of his medical license in 1998. The Board first required Dr. Carter to undergo physical cardiac neuro-psychological and ophthalmological examinations. After a full evidentiary administrative hearing, the Board denied reinstatement based on medical reports from those examinations. Those examinations concluded that he had certain impairments which the Board believed would endanger the public given Dr. Carter's intention to return to surgical practice. The Board also noted his "demonstrated impairment and significant past history" and concluded that this informal clinical exposure at the Hospital and subsequent volunteer work was "woefully" inadequate to demonstrate his competence to resume practice. Dr. Carter appealed this decision to the Norfolk Circuit Court, but that appeal was also dismissed due to his failure to comply with Rule 2A:4 (requirement that the petition for appeal be filed within thirty days after filing the notice of

appeal and requiring the petition to set forth the errors assigned, reasons why the case decision is deemed unlawful, etc.). Dr. Carter again sought reinstatement in October 1999 and the Board again denied his application. The Board stated that Dr. Carter had failed to produce any medical evaluations to contradict the findings of the neuropsychological evaluation done in 1998 by Dr. Ball, the Board's doctor, who found evidence of memory loss and a lack of ability to understand and solve complex problems. This memory loss was confirmed in another report by Dr. Anne Redding who noted that while Dr. Carter's tremor in his hand was not severe at that time, he did show signs of short-term memory loss.

Dr. Carter also submitted to an independent examination in October 1999 with Dr. Scott Sautter of Virginia Beach. Transcript of Russell Carter's Hearing at 37. At the reinstatement hearing in 1999, Dr. Carter stated that the results were essentially the same as the results found by Dr. Ball in 1998, i.e., evidencing memory loss. *Id.* Dr. Carter did not provide the Board with a copy of this report. The Board concluded that based upon Dr. Carter's own testimony and his past appearances before the Board, that he continued to lack insight into his own impairments that related to the practice of medicine. The Board essentially heard the same evidence and arguments presented to them in 1998 and denied Dr. Carter's reinstatement.

Dr. Carter's notice of appeal of the 1999 Order was filed with the Board on November 23, 1999. A signed copy of the petition for appeal was filed on or about December 21, 1999, and was served on the Board December 30, 1999. Dr. Carter however did not deliver a transcript of the testimony from the formal administrative hearing to the Board within thirty days of his filing his Notice of Appeal, as required by Rule 2A:3. On January 6, 2000, the Board filed a Motion to Dismiss based on this failure to comply with the rules and other legal arguments. On January 19, 2000, an unsigned copy of Dr. Carter's petition for appeal was served on the Board and the Board filed a renewed Motion to Dismiss on January 27, 2000.

Dr. Carter asserts the following errors in his petition for appeal:

(a) the Board violated its agreement with Carter which provided that a mini-residency would serve in lieu of his passing the SPEX examination and that petitioner completed a mini-residency with high recommendations for reinstatement from all supervisors;

(b) the Board failed to accept credible information that the Board itself requested requiring all physicians and surgeons to furnish documented cases and procedures petitioner voluntarily assisted with at Norfolk Community Hospital;

(c) the Board arbitrarily and improperly gave unwarranted credibility to the psychiatric evaluation done by J. D. Ball, Ph. D., who had no surgical experience or expertise;

(d) the Board did not properly evaluate all of the comprehensive examinations it requested petitioner submit to (i.e. neuro-psychiatric evaluation, cardiovascular comprehensive exam, comprehensive ophthalmologic exam, diabetes evaluation);

(e) the Board improperly and wrongfully considered only factors related to petitioner's ability to perform surgery and not factors related to his ability to practice medicine generally;

(f) the Board arbitrarily imposed standards and requirements far exceeding the normal requirements for obtaining reinstatement;

(g) the Board arbitrarily denied reinstatement of petitioner's medical license while restoring other physicians' licenses who were felons including one doctor convicted of taking indecent liberties with a child;

(h) the Board erred by not following its own order of October 7, 1993, stating that in the interim, Dr. Carter shall adhere to the terms of the Board's February 27, 1992 Order except that he shall not register to sit for SPEX pending his reappearance before the Board.

Dr. Carter further contends that the requirement imposed by the Board that he take and pass the SPEX examination was not required of fourteen other Virginia physicians who were required (like him) to take the program in prescribing controlled and dangerous substances. He also states that the Board did not request petitioner to sit for the SPEX exam after the October 1993 Order. Dr. Carter was *pro se* at the time of filing his response to the Board's Motion to Dismiss. The Board asserts that Dr. Carter's failure to comply with the Rules of the Virginia Supreme Court favor dismissal of his appeal. If the appeal is not dismissed, the Board argues that there is sufficient evidence in the record to sustain the Board's 1999 Order.

## I. *Failure to Comply with Rule 2A:3*

The Board, through counsel, asserts that Dr. Carter's failure to deliver a copy of the transcript of the formal administrative hearing within thirty days of the notice of appeal, as required by Rule 2A:3, is fatal to his current appeal. The Board did receive a copy but it was not until after the thirty-day time requirement set forth in the Rule. Rule 2A:3 states:

(a) If a formal hearing was held before the agency, the appellant shall deliver to the agency secretary with his notice of appeal, or within 30

days thereafter, a transcript of the testimony if it was taken down in writing, or if it was not taken down in writing, a statement of the testimony in narrative form. If the agency secretary deems the statement inaccurate, he may append a further statement by specifying the inaccuracies.

As an initial matter, Virginia's Administrative Process Act grants an aggrieved party the right to appeal the case decision by "an appropriate and timely court action against the agency . . . in the manner provided by the rules of the Supreme Court of Virginia." Va. Code § 9-6.14:16(A). Section (B) of that same provision states that notwithstanding the provisions of § 9-6.14:17, such review shall be based solely upon the agency record and the court shall be limited to ascertaining whether there was evidence in that record to support the case decision of the agency acting as the trier of fact. If the court finds in favor of the complaining party, the court shall remand the case back to the agency for further proceedings. The burden is on the complaining party to demonstrate an error of law subject to review by the court. Pursuant to the Virginia Code, "such issues of law include: (a) accordance with constitutional right, power, privilege, or immunity, (b) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter . . . . (c) observance of required procedure where any failure therein is not mere harmless error, and (d) the substantiality of the evidential support for findings of fact. The determination of such fact issue[s] is to be made upon the whole evidential record provided by the agency. . . ." Va. Code § 9-6.14:17.

The Board asserts that Rule 2A:3(A) is mandatory. The Virginia Court of Appeals has determined that the thirty-day requirement in Rule 2A:4 (instead of 2A:3 presently at issue) is mandatory. *Mayo v. Department of Commerce*, 4 Va. App. 520, 358 S.E.2d 759 (1987). Rule 2A:4 is similar to the one at issue, but it applies to the filing of the petition for appeal as opposed to delivering the transcript. The rule states that within thirty days after the filing of the notice of appeal, the appellant *shall* file his petition for appeal with the clerk of the circuit court. In fact, in another appeal by the same petitioner challenging the Board's Order of 1998, the appeal was dismissed because of petitioner's failure to comply with Rule 2A:4. In the case at bar, it is a different section but with the same time requirement. The Board argues that since the time limit in Rule 2A:4 is mandatory, the time limit in Rule 2A:3 must also be mandatory. The court in *Mayo* stated that "[g]enerally, rules governing appeal procedures are mandatory and 'compliance with them is necessary for the orderly, fair, and expeditious administration of justice'." *Mayo*, 4 Va. App. at 522, quoting *Condrey v. Childress*, 203 Va. 755, 757,

127 S.E.2d 150 (1962). "Failure to comply with the rules renders an appeal subject to dismissal." *Id.* The court then discussed the purpose of specific time limits by stating "[if] the required papers are not [timely] filed, the appellee is entitled to assume that the litigation is ended, and to act on that assumption." *Id.*; *see also Long v. Commonwealth,* 7 Va. App. 503, 506, 375 S.E.2d 368 (1988) (holding that the forty-day time limit in Rule 5A:12(a) for filing a petition for appeal is a jurisdictional requirement), citing *Upshur v. Haynes Furniture Co.,* 228 Va. 595, 597, 324 S.E.2d 653, 654 (1985) (where the Supreme Court, in interpreting its own filing requirements, stated: "[t]he time for filing petitions for appeal fixed in Code § 8.01-671 and Rule 5:24 is jurisdictional").

The court further interpreted the actual wording of Rule 2A:4. The court determined that the word "shall" generally means mandatory. *Id.* at 523. The petitioner in *Mayo* also tried to argue that, pursuant to Rule 2A:5, the circuit court may extend the time limitation of 2A:4(a) and consider its action as "further proceedings." The court was not persuaded by this argument and concluded that that interpretation would circumvent the clear intent of the scheme laid down in the rules for administrative appeals. *Id.*

In this case, petitioner argues that he made an effort to comply with Rule 2A:3. The Board did eventually receive a copy of the transcript. Dr. Carter states in his brief that, when he filed his petition for appeal with the clerk's office, he also requested that a copy of the transcript be delivered to the Board by the Sheriff's Department within the time limit. This did not happen. Upon learning of the Sheriff's failure to deliver the transcript, Dr. Carter delivered another copy to the Clerk's office and again requested that the transcript be delivered. Dr. Carter contends that, if he had known that it would not be delivered within thirty days, he could have had the document sent by overnight express delivery or he states that he would have driven to Richmond, to deliver the transcript to the Director of the Board, Mr. Warren Koontz, personally. Dr. Carter also states that he was delayed himself in receiving any copy of the transcript because of factors beyond his control, essentially because he could not afford to purchase one. Petitioner asserts that he is not a lawyer nor could he afford to be represented by one because of his revoked medical license; he asks for leniency with respect to the rule at issue. Dr. Carter further contends that the respondent has not been prejudiced by this delay in that it did not hinder or impede the Board's ability to prepare a response to Dr. Carter's petition for appeal.

In this case Petitioner did file his notice of appeal and the actual petition for appeal in accordance with the Rules, but, as already stated, he did not deliver the transcript within the time limit. The *Mayo* case interprets the word

"shall" to mean that it is a mandatory requirement. In the instant case the rule at issue also uses the word "shall." *See* Rule 2A:3(a). If the reasoning of the *Mayo* court is adopted here, then the appeal must be dismissed as being unperfected. The court finds that the language and reasoning in *Mayo* equally applies in the instant case. Petitioner did not comply with the Rule and that failure acts to defeat his appeal. However, the Court will also address the other matters in this case.

## II. *Whether Petitioner May Amend His Petition for Appeal*

Apparently, Dr. Carter sought to amend his petition for appeal, although there is no argument regarding this in the record other than the Board's. The Board contends that the trial court has no authority to allow petitioner to amend his petition. Generally, the rules of civil procedure do not apply to administrative proceedings unless the administrative rules themselves provide for such application. *Broomfield v. Jackson*, 18 Va. App. 854, 858, 447 S.E.2d 880 (1994). The general rule of civil procedure which permits amendments to pleadings by leave of court is Rule 1:8. In a memorandum opinion by the Virginia Court of Appeals, the Court refused to allow the petitioner to amend his petition. *Garland v. Virginia Employment Commission*, Record No. 0433-00-3, (August 8, 2000). The court concluded that the trial court did not have authority to grant petitioner permission to amend his petition for review outside the thirty-day appeal period. *Id.* at 7. Granting permission to amend a pleading outside the time period is not an implicit right of an appellate tribunal. *Id.*

## III. *May the Court Take Additional Evidence for the First Time on Appeal*

Petitioner claims that the Board did not take into consideration certain evidence which he claims would have changed their decision. After reviewing the record in this case, it appears that the Board had all the evidence Dr. Carter refers to and did take the evidence into consideration. Not only did they have the evidence but they questioned Dr. Carter on certain documents he presented during the hearing. The Board had heard the same arguments and evidence one year earlier when Dr. Carter sought reinstatement in 1998, which the Board ultimately denied. The Board had that 1998 reinstatement file during this second hearing as well. Notwithstanding those observations, a circuit court generally may not consider additional evidence for the first time on appeal.

In *School Board of County of York v. Nicely*, the court stated that cases subject to review outlined in Code § 9-6.14.17 of the VAPA cannot be considered a trial de novo since factual issues on appeal are decided strictly from the record. 12 Va. App. 1051, 1062 (1991). The reviewing court may not take additional evidence unless a full agency record does not exist. *Id*. The circuit court's role in administrative appeals is equivalent to an appellate court's role in an appeal from a trial court. *Id*. For example Rule 2A:5 excludes discovery for administrative appeals. *Baumann v. Virginia Retirement System*, Record No. 1194-99-4, (August 29, 2000) (memorandum opinion). The *Baumann* court analyzed "judicial review" of agency action. "Upon judicial review of agency action . . . the court must examine the entire record to [ascertain] whether there was substantial evidence . . . upon which the agency as the trier of the facts could reasonably find them to be as it did." *Id*.

As stated above, Code § 9-6.14:17 places the burden to show an error of law upon the complaining party. That section also goes to great lengths to explain the reviewing court's role in determining factual issues. It provides:

> The determination of such fact issue is to be made upon the whole evidential record provided by the agency. . . . When the decision on review is so to be made on such agency record, the duty of the court with respect to issues of fact is limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of facts could reasonably find them to be as it did. . . . Whether such fact issues are reviewed on the agency record or one made in the review action, the court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.

Va. Code § 9-6.14:17 (1998); *see also J. P. v. Carter*, 24 Va. App. 707, 485 S.E.2d 162 (1997). In *J. P. v. Carter*, the court found that the evidence in the agency record was "substantial" and therefore refused to take any additional evidence simply at the request of one of the parties. 24 Va. App. at 722. In concluding that this was the proper outcome, the Court reviewed Rule 2A:4(b) which provides that "[t]he petition for appeal *shall* designate the regulation or case decision appealed from, *specify the errors assigned*, state the reasons why the regulation or case decision is deemed to be unlawful and conclude with a specific statement of the relief requested." *Id*. at 721, citing Rule 2A:4(b),

Rules of the Supreme Court of Virginia (2000). Thus, in an agency appeal, the circuit court is not free to take additional evidence. *Id.*

There is one narrow but important exception to the general rule of not allowing the trial court to take additional evidence on appeal. It is within the discretion of the trial court to take evidence to resolve claims of arbitrary action or bad faith, "but such evidence should be limited to that purporting to show that the agency denied the applicant a fair and impartial review of his application in accordance with proper procedures." *Id.*, citing *State Bd. of Health v. Godfrey*, 223 Va. 423, 433-34, 290 S.E.2d 875 (1982). If the proffered evidence tends to show that the fact-finding process was tainted by unfair prejudice or animosity, "the agency may be said to have decided the case on factors irrelevant to the issues of fact before it." *Baumann*, at *3, quoting *State Bd. of Health v. Godfrey*, 223 Va. at 434, 290 S.E.2d at 881.

In the instant case, the petitioner Dr. Carter offered all of his evidence at the administrative hearing. The record consists of exhibits offered into evidence by both himself and the Commonwealth in this matter which is the same as the evidence presented in the 1998 hearing. He brought no witnesses besides himself. Petitioner merely suggests that the Board acted arbitrarily because in his opinion certain evidence was not considered by the Board; if they had considered it, then they would have ruled in his favor. This argument does not overcome petitioner's burden to show that the Board acted arbitrarily or that they did not consider evidence as asserted in his assignments of error. The record and transcript of the hearing is complete. This was petitioner's second appeal of the same type of order. It was also petitioner's tenth time in front of the Board altogether. The Board was familiar with his case and situation and with the evidence they had to consider. There is no evidence in this record that the Board acted arbitrarily in any manner.

In order to adequately respond to Dr. Carter's allegations, the following is noted. The Board gave sufficient weight to the credibility of Dr. Ball because he was a doctor specializing in neurology and psychiatry, which is what the Board was concerned about with Dr. Carter. This was because there was evidence showing consistent and significant weaknesses in his ability to learn new information and in complex problem solving, particularly if he had to work under time pressure. Dr. Carter had an independent evaluation done but did not provide a copy of that report to the Board and in fact admitted that the results were "essentially the same" as Dr. Ball's results. Transcript at 37. The Board did discuss with Dr. Carter his ability to practice general medicine, contrary to Dr. Carter's assertion in error (e) above. Transcript at 45, 102-04. The transcript further reveals that Dr. Carter believed that his "mini-residency" would take the place of the SPEX exam because of certain letters

between himself and third parties, not because of anything the Board had said or agreed to. Transcript at 61-65. The Board makes it quite clear that it has never been their policy to make such an agreement. The "mini-residency" was actually no more than clinical exposure that Dr. Carter thought qualified as a residency. Transcript at 76-79. Dr. Carter also never attempted, even though the Board did not ask, to take the SPEX again after about 1994.

Further, the record reflects that the Board did take into consideration the fact that he received favorable recommendations from doctors that he worked with in his clinical exposure. The Board also acknowledged his attempts to continue his training and education but found that it was not adequate to show that he had regained competence to practice medicine. The Court cannot second guess the Board or substitute its own judgment for that of the Board.

## Conclusion

In sum, the record is complete. It reveals no evidence of arbitrary action on the part of the Board nor any evidence of unfair prejudice. The evidence reveals that the Board acted appropriately in deciding the issue of Dr. Carter's reinstatement. It is unfortunate that Dr. Carter can no longer practice as he wishes; however, the trial court may not overturn the Board's decision where, as here, there is substantial evidence in the record to support the Board's actions. The Court may not take additional evidence on appeal when there is an ample record. The Board's decision is sustained.