COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Petty and Senior Judge Annunziata
Argued at Alexandria, Virginia


FARID A. ZURMATI, D.D.S.
                                             MEMORANDUM OPINION* BY
v.       Record No. 1250-07-4               JUDGE ELIZABETH A. McCLANAHAN
                                                    JUNE 17, 2008
VIRGINIA BOARD OF DENTISTRY


                     FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                David T. Stitt, Judge

              August McCarthy for appellant.

              Howard M. Casway, Senior Assistant Attorney General
              (Robert F. McDonnell, Attorney General; David E. Johnson,
              Deputy Attorney General; Jane D. Hickey, Senior Assistant
              Attorney General, on brief), for appellee.


       Farid A. Zurmati, D.D.S., appeals from an order of the circuit court affirming those

portions of an order of the Virginia Board of Dentistry (Board):  (a) setting forth the Board's

determination that Zurmati engaged in unprofessional conduct in the form of a deceptive billing

practice, in violation of Code § 54.1-2706(4); and (b) imposing various sanctions against him

based, in part, on this alleged violation.[1]  Zurmati contends on appeal the circuit court erred

because:  (1) the Board's finding of fact, upon which it based his alleged violation of Code

§ 54.1-2706(4), was not supported by substantial evidence; (2) the Board's same finding of fact

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The sanctions were also purportedly based on the Board's determination that Zurmati committed two minor recordkeeping violations.  The circuit court reversed the Board as to one of the alleged violations and affirmed the Board's finding as to the other.  Neither of those rulings is on appeal to this Court.  However, the recordkeeping violation affirmed by the circuit court is relevant to our remand of this case, in terms of the Board's sanctions against Zurmati.

did not constitute a violation of Code § 54.1-2706(4) as a matter of law; and (3) the Board

violated his due process rights because of both inadequate notice of the Board's claim that he

engaged in deceptive billing and the Board's failure to call as witnesses any of his patients whom

he allegedly deceived.  Concluding the Board's disputed finding of fact was not supported by

substantial evidence in the record, we reverse the judgment of the circuit court affirming that

portion of the Board's order and its sanctions, and remand the case.[2]

## I.  BACKGROUND

Zurmati appeared before the Board at a formal administrative hearing on the Board's

eight allegations (including subparts) against Zurmati regarding his billing practice,

recordkeeping, and treatment of certain patients.  Following the two-day hearing, the Board

entered an order containing numerous findings of fact and conclusions of law relative to the

allegations.  The Board exonerated Zurmati on five of the allegations of wrongdoing.  The Board

also concluded in its order, however, that Zurmati had committed three violations in the areas of

billing and recordkeeping.

More specifically, regarding Zurmati's billing practice, the Board stated in its finding of

fact number 2:

> During Dr. Zurmati's treatment of the following patients,
> he submitted a proposed treatment plan to each patient that
> included a total cost for each proposed procedure, based on the
> amount to be paid by the patient and their insurance carrier.  Each
> treatment plan was signed by the respective patients.  [Listing of
> nine patients with dates of treatment plans and dates of services
> rendered.]  Following the procedures, *Dr. Zurmati charged the
> insurance companies amounts higher than the corresponding
> amounts stated on the patients' respective primary treatment
> plans*.

---

[2] Because of our holding on the substantiality of evidence issue, we need not address
Zurmati's other two issues presented on appeal also challenging the Board's conclusion that he
engaged in deceptive billing in violation of Code § 54.1-2706(4).

(Emphasis added.) The Board then concluded that this finding constituted a violation of Code § 54.1-2706(4) (Board's conclusion of law number 1). Code § 54.1-2706(4) provides, in relevant part, that the Board may "censure or reprimand any licensee or place on probation for such time as it may designate for . . . [a]ny unprofessional conduct likely . . . to deceive the public or patients."

With regard to Zurmati's recordkeeping, the Board stated in finding of fact number 4(a) that his records for eleven patients "failed to include the patients' names on each page of the patients' records, notwithstanding his claim that there was no need to do so as the patient records always remain in their respective files." The Board concluded that this finding constituted a second violation (citing Code § 54.1-2706(9) and 18 VAC 60-20-15(1) of the Board's regulations) (Board's conclusion of law number 2).

Further, in finding of fact number 4(b), the Board stated, "Dr. Zurmati's duplicate work orders that he submitted for [ten patients] failed to include his address," and concluded that this constituted a third violation (citing Code §§ 54.1-2706(9) and 54.1-2719(B), and 18 VAC 60-20-15(8) of the Board's regulations) (Board's conclusion of law number 3).

Upon these conclusions, the Board imposed in its order sanctions against Zurmati consisting of a reprimand, an unannounced inspection of Zurmati's dental practice, random sampling of his patient records by the Department of Health Professions, and the requirement that Zurmati complete four hours of continuing education in recordkeeping.

In a petition for appeal to the circuit court, Zurmati challenged each of the alleged violations on various grounds. Specifically as to the Board's conclusion that he violated Code § 54.1-2706(4) by his billing practice, Zurmati asserted, *inter alia*, that the Board's order "makes a factual finding [i.e., finding of fact number 2] that was never before alleged, namely, that [he] charged insurance companies amounts higher than the corresponding amounts stated on the

patients' primary treatment plans." "This finding," he contended, "was concocted during the formal hearing; it was not alleged during the many months leading up to the hearing." Nevertheless, Zurmati further asserted, "[w]hat the Board ignores is that insurance companies require that [he] submit his 'usual and customary fee' to the insurance company . . . . What the patients saw was the insurance fee, which is the fee the insurance company would eventually give the patient credit for. There is no inconsistency in this practice; indeed, it is standard in the industry," he explained. "Yet this is the entire basis for the Board's [conclusion of law number 1]." Finally, Zurmati stated that the Board's finding regarding his subject billing practice consisted of "vague references to conduct that allegedly could deceive but which has never been shown to have actually deceived anyone" and that "[t]he Board has made no attempt to demonstrate how the alleged conduct—e.g., submitting a fee to an insurance company that is different from an amount shown to a patient, which is standard in the industry and required by the insurance companies—violates any provision of law."

After hearing argument on Zurmati's petition, the circuit court entered an order reversing the Board's order as to finding of fact 4(a) (upon which the Board based its conclusion of law number 2), concluding that the applicable regulations did not require the patient's name to appear on each page of the patient's records. The court further ordered that the remainder of the Board's order "shall remain in effect," thus affirming Zurmati's alleged billing violation and other recordkeeping violation, and each of the sanctions against him. In rejecting Zurmati's various challenges to his alleged billing practice violation under Code § 54.1-2706(4) (Board's conclusion of law number 1), the court found, *inter alia*, that the Board's finding of fact number 2, upon which the Board based this violation, was supported by substantial evidence in the record.

II. ANALYSIS

Substantiality of the Evidence[3]

Under the VAPA, "the duty of the court with respect to issues of fact shall be limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of the facts could reasonably find them to be as it did." Code § 2.2-4027; see Campbell v. Virginia Dep't of Forestry, 46 Va. App. 91, 98, 616 S.E.2d 33, 36 (2005). "We thus have authority to reject agency factfinding only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." Id. (citations and internal quotation marks omitted).

---

[3] The Commonwealth contends that Zurmati, in his appeal to the circuit court, failed to preserve his challenge to the substantiality of evidentiary support for the Board's finding of fact regarding his alleged deceptive billing practice.

The Virginia Administrative Process Act (VAPA) governs disciplinary hearings before the Board. See generally Code § 2.2-4001; Goad v. Virginia Bd. of Med., 40 Va. App. 621, 633, 580 S.E.2d 494, 500 (2003). Under the VAPA, the circuit court reviews the Board's action in a manner "equivalent to an appellate court's role in an appeal from a trial court." J.P. v. Carter, 24 Va. App. 707, 721, 485 S.E.2d 162, 169 (1997) (quoting School Board v. Nicely, 12 Va. App. 1051, 1061-62, 408 S.E.2d 545, 551 (1991)) (internal quotation marks omitted). "In this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal." Gordon v. Allen, 24 Va. App. 272, 277, 482 S.E.2d 66, 68 (1997) (citation omitted). Relating to issues on appeal, Code § 2.2-4001 of the VAPA provides, in relevant part, that the party complaining of agency action has the burden to "*designate* and demonstrate an error of law subject to review by the court. Such issues of law include: . . . (iv) the substantiality of the evidentiary support for findings of fact." (Emphasis added.) In perfecting its appeal from the agency to the circuit court, the complaining party must therefore "designate" each such issue in its petition for appeal filed with the circuit court. See Pence Holdings, Inc. v. Auto Ctr., Inc., 19 Va. App. 703, 707, 454 S.E.2d 732, 734 (1995).

Based on Zurmati's above-stated assertions in his petition for appeal to the circuit court, we conclude Zurmati preserved for appeal the issue of whether the Board's finding of fact regarding his alleged deceptive billing practice was supported by substantial evidence. What the evidence showed, Zurmati asserted, was not that he "*charged* the insurance companies amounts higher than the corresponding amounts stated on [his] patients' respective primary treatment plans," as the Board found, but rather that he simply submitted to the insurance companies his "usual and customary fee," as they required. (Emphasis added.) However, it was, in fact, the "insurance fee," he further indicated, which the patients saw on their treatment plans, and upon which he was actually paid for his services. The substantiality of the evidentiary support for the Board's disputed finding of fact is thus before this Court for review.

From our review of the record in this case, we conclude that no trier of fact could reasonably find Zurmati "charged" the insurance companies more for his dental services than was indicated to his patients on their primary treatment plans. The Commonwealth argues that evidence of such an alleged deceptive billing practice was established by the fact that Zurmati "charged" the insurance companies his "usual and customary fee," whereas he showed the patients only the lesser "insurance fee," including the portion of that fee which they would be responsible to pay (based on a deductible and/or a co-payment) under their respective dental insurance plans. The undisputed facts negate that assertion.

As the evidence showed, Zurmati's "usual and customary fee" (UCF) was the fee his office established for particular dental procedures and charged to patients who had no dental insurance. The "insurance fee," on the other hand, was the fee applied to insured patients. That fee was pre-determined by the patient's insurance company, as listed on the company's fee schedule setting forth a fee for each particular procedure, along with a corresponding code number (as established by the American Dental Association (ADA)). Such fee is referred to in the industry as the insurance company's "usual and customary rate" (UCR). For the patients and procedures at issue in this case, Zurmati's UCF was higher than the respective insurance company's UCR. Under Zurmati's contract with each insurance company, Zurmati agreed to accept the lesser UCR as the fee for his services rendered to each insured patient. Accordingly, Zurmati provided a written office policy to the insured patients explaining "the amount to be paid by your policy is pre-determined and agreed to by your employer and the insurance company. Most policies cover what they consider [the UCR]. However, the insurance company sets those fees, and they are not the same as the fees that are charged in this office." Zurmati also provided the insured patients with a written "primary treatment plan" in advance of treatment. The plan identified the dental procedure(s) expected to be performed based on an

- 6 -

initial examination, the fee for the procedure(s) in the amount of the UCR, the portion of the fee to be paid by the insurance company, the portion of the fee to be paid by the patient, and the ADA code number for each procedure.

The Commonwealth is correct in asserting that Zurmati did, in fact, submit his UCF to the respective insurance companies in the process of billing the companies for the procedures he performed for the subject insured patients. However, the Commonwealth's expert witness, Denise Fortner, admitted that each of those nine patients paid what he or she was supposed to pay, and the insurance company paid what it was supposed to pay, according to Zurmati's contract with the insurance company, the patient's insurance policy, and the applicable UCR. Fortner also explained that the insurance companies made their payments to Zurmati according to the ADA codes he submitted to the companies, which "equated" to the procedures he performed. Moreover, Fortner conceded that Zurmati collected his fee from the insurance companies and the patients consistent with the explanation on the patients' primary treatment plans regarding fees, with one exception. In that instance, after the primary treatment plan was presented to the patient, there was a change in the patient's insurance provider, resulting in a change in benefits under the patient's superseding dental insurance plan. Fortner nevertheless testified that she did not know "why you would need to have two different dollar amounts for the same date of service for the same ADA code," referring to what she described as "the disconnect" between the listing of the UCR on the patients' primary treatment plans and Zurmati's submission of his UCF to the insurance companies. Zurmati's unrefuted explanation was simple: the insurance companies required him to provide his UCF for the procedures on which he was seeking payment. His office manager also explained that the software being used for billing purposes during the relevant time period only produced Zurmati's UCF. As a result,

- 7 -

the information on the insured patients' primary treatment plans regarding the UCR was produced by hand.

Thus, the fact Zurmati provided the insurance companies his UCF did not mean that he was charging the companies for the subject procedures based on that fee schedule. A "charge" in this context means to "demand (an amount) as a price from someone for a service rendered or goods supplied." New Oxford American Dictionary 286 (2d ed. 2005); see also Random House Webster's Unabridged Dictionary 342 (2d ed. 2001) (defining "charge" as "to impose on or ask of (someone) a price or fee"). The evidence of record belies any contention that Zurmati was asking, much less demanding, that the insurance companies pay him based on his UCF. In sum, Zurmati was contractually bound to accept payment from the insurance companies based on their UCR, and in each instance that was the basis for each company's payment to him. The insurance companies made such payments to Zurmati according to the ADA codes he submitted to the companies in seeking payment, not his UCF. The patients' primary treatment plans prepared by Zurmati's office indicated that payment would be based on the insurance companies' UCR. And there is no indication in the record that, once Zurmati received the payments from the insurance companies based on their UCR, he sought to collect the difference between their UCR and his UCF.

There was no substantial evidence to support the Board's finding that Zurmati was charging the insurance companies his UCF when he provided that fee information to the insurance companies with his requests for payment. Consequently, there was no finding of fact upon which to base the Board's conclusion that Zurmati was engaged in deceptive billing in violation of Code § 54.1-2706(4). See Campbell, 46 Va. App. at 98-102, 616 S.E.2d at 36-38.

III.  CONCLUSION

For these reasons, we reverse those portions of the circuit court's order affirming the Board's conclusion that Zurmati violated Code § 54.1-2706(4), and the sanctions imposed by the Board based, in part, on this alleged violation.  Furthermore, in light of this holding, the Board must reconsider which, if any, of its sanctions against Zurmati should be imposed based solely on the existence of the recordkeeping violation that was affirmed by the circuit court (Board's finding of fact 4(b) and conclusion of law 3).[4]  "Where a case decision is found 'not to be in accordance with law under [Code] § 2.2-4027, the court shall suspend or set it aside and remand the matter to the agency for further proceedings, if any, as the court may permit or direct in accordance with law.'"  Harrison v. Ocean View Fishing Pier, LLC, 50 Va. App. 556, 575-76, 651 S.E.2d 421, 431 (2007) (quoting Code § 2.2-4029).  Accordingly, we remand the case to the circuit court with instructions to further remand it to the Board for reconsideration of the sanctions imposed against Zurmati in a manner consistent with this opinion.

Reversed and remanded with instructions.

---

[4] See, infra, footnote 1.