Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, Petty, Beales, Alston,
              McCullough, Huff and Chafin
Argued at Richmond, Virginia

MUSE CONSTRUCTION GROUP, INC.

<table>
<tr><td></td><td></td><td>OPINION BY</td></tr>
<tr><td>v.</td><td>Record No. 1134-11-2</td><td>JUDGE WILLIAM G. PETTY</td></tr>
<tr><td></td><td></td><td>NOVEMBER 13, 2012</td></tr>
</table>

COMMONWEALTH OF VIRGINIA BOARD
  FOR CONTRACTORS AND WARREN
  AND BEVERLY WHARTON

UPON REHEARING EN BANC

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

George H. Dygert (Dygert, Wright, Hobbs & Heilberg, PLC, on
brief), for appellant.

Steven P. Jack, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee
Commonwealth of Virginia Board for Contractors.

No brief or argument for appellees Warren and Beverly Wharton.

Muse Construction Group, Inc. ("Muse") appeals from an order of the trial court

dismissing Muse's appeal from a case decision by the Board for Contractors ("Board") that

revoked Muse's contractor's license. Muse argues that the trial court erred in concluding that

Rule 2A:4(a) requires service of process upon an agency secretary in the same manner as is

required for service of a complaint initiating a civil action. A divided panel of this Court held

that Rule 2A:4(a) did not require formal service of process in Muse's case and accordingly

reversed the trial court's decision. Muse Constr. Group, Inc. v. Commonwealth Bd. for

Contractors, 60 Va. App. 92, 724 S.E.2d 216 (2012). We subsequently granted the

Commonwealth's petition for rehearing en banc and stayed the panel decision.[1]  On rehearing en

banc, we hold that Rule 2A:4(a) contemplates formal service of process as with a complaint

initiating a civil action.  Therefore, we affirm the judgment of the trial court.

## I. BACKGROUND

The only facts relevant to this appeal are the procedural facts of the case, which the

parties agree are not in dispute.  The Board entered a final opinion and order on September 21,

2010, revoking Muse's license and imposing various monetary penalties.  Muse filed its notice of

appeal on October 22, 2010, and mailed copies of the notice to the other parties by certified mail.

On November 10, 2010, Muse filed its petition for appeal with the clerk of the trial court, and on

the same day mailed copies of its petition to the other parties by certified mail.[2]

On February 7, 2011, the Board filed a plea in bar claiming lack of jurisdiction for

Muse's failure to perfect service upon the Board's secretary as required by Rule 2A:4.  The next

day, Muse requested the clerk of the trial court to serve its petition on the parties, and Muse paid

the clerk for such service at that time.  The Board's secretary was served with Muse's petition for

appeal on February 25, 2011.

On March 3, 2011, the Board moved to dismiss Muse's petition for appeal.  The Board

argued that Muse had failed to take all the necessary steps to cause a copy of its petition to be

served on the agency secretary as required by Rule 2A:4(a).  In reply, Muse argued that the

Rules do not require the petition for appeal to be served in the same manner as initial process is

served in a civil action.  Muse characterized its appeal from the agency's decision as "an ongoing

---

[1] By granting the petition for rehearing en banc, we vacated the previous panel decision.
See Logan v. Commonwealth, 47 Va. App. 168, 170, 622 S.E.2d 771, 772 (2005) (en banc).

[2] The secretary of the Board received a copy of Muse's petition on November 12, 2010.

action" and argued that service of its petition for appeal need be no different from service of a petition for appeal of a circuit court decision to this Court or the Supreme Court.[3]

The trial court entered a final order dismissing Muse's appeal on May 31, 2011. In its order, the trial court found that Muse failed to timely "take the steps required by Rules 3:2, 3:3 and 3:4 of the Rules of the Supreme Court of Virginia for filing and service of a complaint to commence a civil action to have the petition for appeal served with process upon the agency secretary . . . as required by Rule 2A:4(a)." Muse then appealed to this Court.

## II. ANALYSIS

The question presented to us in this appeal is whether Rule 2A:4(a) requires service of process in the same manner in which process is served to initiate a civil action. We hold that it does.

The interpretation of Rule 2A:4(a) and other relevant statutory language is a question of law that we review *de novo*. See Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (noting that issues of statutory interpretation are pure questions of law subject to *de novo* review). In construing the language of rules and statutes, "we must give effect to the [drafters'] intention[s] as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Id. Indeed, "'[t]he primary objective of statutory construction is to ascertain and give effect to legislative intent.'" Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010) (quoting Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)). Moreover, "'[i]t is a cardinal rule of construction that statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished.'" Alston v. Commonwealth, 274 Va. 759, 769,

---

[3] We note that we have only a written statement of facts in this case and no transcript of any hearings in the trial court. Thus, we have only Muse's memorandum in opposition to the Board's motion to dismiss to indicate what arguments Muse preserved in the trial court below.

652 S.E.2d 456, 462 (2007) (quoting Prillaman v. Commonwealth, 199 Va. 401, 406, 100 S.E.2d 4, 8 (1957)). These principles apply equally to construing the language of the Rules of the Supreme Court as they do to construing statutory language.

### A. The Meaning of Rule 2A:4(a)

Code § 2.2-4026, part of the Virginia Administrative Process Act ("VAPA"), provides that the judicial branch of government may review certain actions taken by administrative agencies "in the manner provided by the rules of the Supreme Court of Virginia." Part Two-A of the Rules of the Supreme Court of Virginia sets forth the Rules governing the courts' review of such actions, pursuant to Code § 2.2-4026. See Rule 2A:1(a).

Rule 2A:4 prescribes the requirements for a petition for appeal from an agency regulation or case decision. Rule 2A:4(a) states, in relevant part:

> Within 30 days after the filing of the notice of appeal, the appellant shall file a petition for appeal with the clerk of the circuit court named in the first notice of appeal to be filed. *Such filing shall include within such 30-day period both the payment of all fees and the taking of all steps provided in Rule 3:2, 3:3 and 3:4 to cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary and on every other party.*

(Emphasis added.)

The plain language of the Rule requires the party complaining of an agency action to take all steps provided in Rules 3:2, 3:3, and 3:4 to cause a copy of the petition for appeal to be served in the same manner as service is accomplished in a civil action. That this is referring to formal service of process that *initiates* a civil action, and not to some other type of service in an already-instituted civil action, is apparent from both (1) the language of the statutory scheme in the VAPA that authorizes judicial review of agency actions in the first place, and (2) the language of numerous other Rules, including those expressly referred to in Rule 2A:4(a), as well as others.

The authority of a court of this Commonwealth to review an action taken by an administrative agency arises from Code § 2.2-4026, which states:

> Any person affected by and claiming the unlawfulness of any regulation, or party aggrieved by and claiming unlawfulness of a case decision and whether exempted from the procedural requirements of Article 2 (§ 2.2-4006 et seq.) or 3 (§ 2.2-4018 et seq.) of this chapter, shall have a right to *the direct review thereof* by an appropriate and timely *court action* against the agency or its officers or agents in the manner provided by the rules of the Supreme Court of Virginia. *Actions may be instituted in any court* of competent jurisdiction as provided in § 2.2-4003, and the judgments of the *courts of original jurisdiction* shall be subject to appeal to or review by higher courts as in other cases unless otherwise provided by law. In addition, when any regulation or case decision is the subject of an enforcement action in court, it shall also be reviewable by the court as a defense to the action, and the judgment or decree therein shall be appealable as in other cases.

(Emphasis added.)

The plain language of this statute indicates that a party seeking to challenge an agency's regulation or case decision has a right to "the direct review thereof" by "instituting" a "court action" in a court that has "original jurisdiction" to hear such an action. This language clearly treats a challenge to an agency regulation or case decision as a brand new judicial proceeding, separate from whatever administrative proceeding may have preceded it. Properly speaking, such a judicial action is not an appeal from a lower judicial tribunal; rather, the legislature carefully refers to such an action as a "direct review" of an administrative agency's conduct.[4]

---

[4] It is true that Part Two-A of the Rules of the Supreme Court uses the term "appeal" to refer to these statutorily authorized judicial review actions. However, the word "appeal" simply means "[a] proceeding undertaken to have a decision reconsidered by a higher authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal." Black's Law Dictionary 112 (9th ed. 2009). The use of the word "appeal" in no way implies that an administrative agency's decision is a judicial proceeding, or that the judicial review action is an appeal from a lower judicial tribunal. Rather, the use of the term "appeal" is perfectly consistent with the fact that the judicial review action is in fact the institution of a new judicial proceeding and should be treated as such for purposes of initial service of process.

Furthermore, such an action must be "instituted" in a court, not simply appealed to or transferred to a court. The court in which such an action is instituted is the court of "original jurisdiction," which implies that no judicial tribunal has previously exercised jurisdiction over the parties and their proceeding.[5]

Other statutory language in the VAPA demonstrates the consistency and purposefulness of the legislature's choice of terminology to describe a judicial review action regarding agency conduct. Code § 2.2-4027 states that "the party complaining of agency action" bears the burden to show an error of law that is "subject to review by the court." It also refers to the "judicial review" of "final agency action" and to "the review action" in the court. Code § 2.2-4027. Likewise, Code § 2.2-4028 speaks of the time when "judicial review is instituted" and authorizes the court to stay certain effects of agency conduct "pending conclusion of the review proceedings." Code § 2.2-4029 refers to "the review action." Importantly, Code § 2.2-4030 speaks of "any *civil case* brought under Article 5 (§ 2.2-4025 et seq.) of this chapter . . . in which any person contests any agency action," Code § 2.2-4030(A) (emphasis added), and it mentions "bring[ing] an action against an agency," Code § 2.2-4030(B). The plain language of the VAPA treats a review action under Code § 2.2-4026 as a new civil action, even expressly calling it a "civil case." Code § 2.2-4030(A).

The legislature's consistent, clear, and careful choice of language in the statutory scheme of the VAPA plainly indicates its intent that judicial actions to review agency regulations or case decisions are to be understood as precisely what they are—newly instituted *judicial* actions affording the opportunity for a *court* to review the regulations or case decisions of an

---

[5] The fact that a trial court gives deference to an agency's findings of fact, Code § 2.2-4027, does not negate the fact that the trial court is functioning as a court of original jurisdiction, since it is not hearing an appeal from a lower judicial tribunal, but is rather reviewing the action of another branch of government.

*administrative agency*.[6] There is no preexisting judicial proceeding that is being continued when a party asks for judicial review of agency conduct.[7] The request for judicial review creates a new judicial proceeding where there was none before.

When Rule 2A:4(a) requires a party seeking judicial review of agency conduct to file a petition for appeal and to ensure that all prerequisites are met for causing a copy of the petition to be served "as in a civil action" on the other parties, the posture of the case at that point is a newly instituted judicial proceeding. Thus, the "service" of the petition on the other parties is an initial service at the commencement of a court action in the judicial system. This fact is further demonstrated by examining the language of the Rules, beginning with the Rules explicitly mentioned in Rule 2A:4(a). Again, Rule 2A:4(a) states, in part:

> Such filing shall include within such 30-day period both the payment of all fees and the taking of all steps provided in Rule 3:2, 3:3 and 3:4 to cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary and on every other party.

---

[6] Indeed, in analyzing the language of what is now codified at Code § 2.2-4026, this Court has previously explained that this statute constitutes a waiver of sovereign immunity, such that "a party [may] obtain judicial review of [an agency's] adoption of rules or [an agency's] case decisions, as such are defined in the VAPA." Va. Bd. of Med. v. Va. Physical Therapy Ass'n, 13 Va. App. 458, 466, 413 S.E.2d 59, 64 (1991). If Code § 2.2-4026 is a waiver of sovereign immunity permitting *suit* against an agency of the Commonwealth in a judicial *court*, see id. at 465-66, 413 S.E.2d at 63-64, such a review action, or suit against an agency, cannot be the continuation of a prior judicial proceeding. It is the very fact that it is a newly instituted judicial proceeding that makes waiver of the Commonwealth's sovereign immunity necessary at precisely that point.

[7] Muse suggests that we treat a court action seeking judicial review of an agency *case decision* differently than we might treat a court action to review an agency *regulation*. Muse suggests that different service requirements might be appropriate for these two types of review actions based on its assertion that judicial review of an agency case decision constitutes "an ongoing case," whereas judicial review of an agency regulation is a new proceeding. However, given that such a distinction is nowhere supported or implied by either the statutory scheme or the Rules of the Supreme Court, we believe it would constitute an arbitrary and unwarranted bifurcation for this Court to declare that there are different rules for service of process depending on what type of agency action is being challenged in a court for the first time.

Rule 3:2 is entitled, "Commencement of Civil Actions." Subsection (a) reads as follows:

> *A civil action shall be commenced* by filing a complaint in the clerk's office. When a statute or established practice requires, *a proceeding may be commenced* by a pleading styled "*Petition*." Upon filing of the pleading, *the action is then instituted* and pending as to all parties defendant thereto. The statutory writ tax and clerk's fees shall be paid *before the summons is issued*.

Rule 3:2(a) (emphasis added). This Rule clearly concerns the commencement of a civil action by the initial filing of the original pleading—whether labeled a "complaint" or a "petition"—in the clerk's office. Additionally, this Rule plainly contemplates the issuance of a *summons* by the court, and it prescribes the requirements that the party initiating the action must fulfill before such a summons will be issued.

Rule 3:4 contains further requirements for a party initiating a new civil action in a court: "Except in cases where service is waived pursuant to Code § 8.01-286.1, the plaintiff shall furnish the clerk when the complaint is filed with as many paper copies thereof as there are defendants upon whom it is to be served." Rule 3:4(a). This language again clearly contemplates official service of process—by someone other than the party initiating the action[8]—and prescribes the requirements that the party initiating the action must fulfill before such service will be made. Also, the reference to Code § 8.01-286.1 illustrates that this Rule is specifically concerned with the requirements for formal service of process at the commencement of a civil action. Code § 8.01-286.1(A) provides: "In an action pending in general district court or circuit court, the plaintiff may notify a defendant of the commencement of the action and request that the defendant waive service of process as provided in subsection B." Rule 3:4 is

---

[8] Code § 8.01-293(A) authorizes the following persons to serve process: (1) the sheriff; (2) "[a]ny person of age 18 years or older and who is not a party or otherwise interested in the subject matter in controversy"; or (3) a "private process server," which is defined as "any person 18 years of age or older and who is not a party or otherwise interested in the subject matter in controversy, and who charges a fee for service of process."

plainly concerned, then, with the requirements for formal service of process at the commencement of a civil action.

These requirements in Rules 3:2 and 3:4 are the precise requirements that Rule 2A:4(a) expressly references. These are plainly *not* the requirements for serving documents in an already-existing action. Rather, they are the specific requirements for having *initial* process served at the *commencement* of a civil action. These are the requirements that Rule 2A:4(a) expressly references as the requirements that a party seeking judicial review of agency conduct must fulfill in order "to cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary and on every other party." Thus, Rule 2A:4(a) contemplates formal service of process in the same manner as occurs with the formal initiation of a civil action.

In addition to the Rules expressly referenced in Rule 2A:4(a), the language of other Rules also demonstrates that Rule 2A:4(a) requires formal service of process in the same manner as occurs when a party commences a civil action.

Rule 2A:5 provides:

> Further proceedings in an appeal under this Part Two-A shall be governed by the rules contained in Part Three, where not in conflict with the Code of Virginia or this part, subject to the following:

> \* \* \* \* \* \* \*

> (3) Once any motions, demurrers or other pleas filed by the agency have been overruled, or if none have been filed *within the time provided by Rule 3:8 for the filing of a response to the process served under Rule 2A:4*, the appeal shall be deemed submitted and no answer or further pleadings shall be required except as provided herein or by order of the court.

(Emphasis added.)

This Rule explicitly refers to "the process served under Rule 2A:4" and treats such service of process as the trigger for the time requirements of Rule 3:8 for filing responsive

pleadings. Rule 3:8 requires that "[a] defendant shall file pleadings in response within 21 days after *service of the summons and complaint* upon that defendant, or if *service of the summons* has been timely waived on request under Code § 8.01-286.1, within 60 days after the date when the request for waiver was sent . . . ." Rule 3:8(a). Thus, "the process served under Rule 2A:4," Rule 2A:5(3), is analogous to "service of the summons and complaint upon [a] defendant," Rule 3:8(a).

Indeed, Rule 3:5 directly states, "The process of the courts in civil actions shall be a summons . . . ." Rule 3:5(a). The Rule then prescribes essentially that a summons must notify the party receiving the summons and attached complaint that unless that party files a responsive pleading within 21 days, the court may enter judgment against that party, either by default or after hearing evidence. Rule 3:5(a). Thus, it is the *summons* that officially informs a party that a responsive pleading is required within a specific period of time. This is the "process" referred to by Rule 2A:4(a).

The statutory language of the VAPA authorizing judicial review of agency actions, the language of Rules expressly referred to in Rule 2A:4(a), as well as the language of other Rules all demonstrate that Rule 2A:4(a) contemplates formal service of process accompanying the commencement of a court action in the judicial system. Such service of process is to be made in the same manner in which process is served when a party initiates a civil action.

### B. The Effect of the 2006 Amendment to Rule 2A:4(a)

Muse argues that the 2006 amendment to Rule 2A:4(a) removed the requirement to serve a copy of a petition for appeal in the same manner as an initial complaint is served in a civil action. We disagree with this contention. The 2006 amendment to Rule 2A:4(a) effected no substantive change to the Rule's requirements.

Prior to January 1, 2006, Rule 2A:4(a) read:

> Within 30 days after the filing of the notice of appeal, the appellant shall file his petition for appeal with the clerk of the circuit court named in the first notice of appeal to be filed. Such filing shall include all steps provided in Rules 2:2 and 2:3 to cause a copy of the petition to be served (as in the case of a bill of complaint in equity) on the agency secretary and on every other party.

On January 1, 2006, Rule 2A:4(a) was amended to read:

> Within 30 days after the filing of the notice of appeal, the appellant shall file his petition for appeal with the clerk of the circuit court named in the first notice of appeal to be filed. Such filing shall include all steps provided in Rules *3:2, 3:3 and 3:4* to cause a copy of the petition to be served (as in *a civil action*) on the agency secretary and on every other party.

(Amended language emphasized.)

Parts Two and Three of the Rules were amended in 2006 to establish a unified set of procedural rules applicable to both legal and equitable causes of action. Kent Sinclair, Guide to Virginia Law & Equity Reform and Other Landmark Changes § 1.01(C) (2006). Rule 3:1 was rewritten to provide: "There shall be one form of civil case, known as a civil action. These Rules apply to all civil actions, in the circuit courts, whether the claims involved arise under legal or equitable causes of action, unless otherwise provided by law." See also Judicial Council of Va., Report to the General Assembly and Supreme Court of Virginia, 42 (2004), available at http://www.courts.state.va.us/courtadmin/judpolicies/2004_jcv_report.pdf (noting that the amendments to the "Rules of Court provide that there will be one form of action in the Virginia courts, called a civil action, and that the procedural provisions in Parts Two and Three of the Rules of the Supreme Court be harmonized"). The amendments made no substantive change to legal or equitable principles, but merely streamlined their procedural practice. Judicial Council of Va., supra, at 41-45; Sinclair, supra, § 1.01(C)(1). Indeed, "no expansion or contraction of powers of any court, or of the claims properly heard therein, . . . result[ed]. (Nor [were] venue,

- 11 -

forum non conveniens, or *service of process rules . . . affected in any way*.)" Judicial Council of Va., <u>supra</u>, at 43-44 (emphasis added); <u>see also</u> Sinclair, <u>supra</u>, § 1.01(C)(2) (using almost exactly the same words to describe the amendments). The 2006 amendments simply did not change the substantive requirements of Rule 2A:4(a).

Before the 2006 amendments, "[w]hen following the equity procedures incorporated by Rule 2A:4, process would be the subpoena in chancery. The clerk of the issuing court would attach process, the subpoena in chancery, to a copy of the bill of complaint and direct it to the sheriff of the bailiwick for service." <u>Bendele ex rel. Bendele v. Commonwealth, Dep't of Med. Assistance Servs.</u>, 29 Va. App. 395, 399, 512 S.E.2d 827, 829 (1999) (citation omitted). The amendment changing "as in the case of a bill of complaint in equity" to "as in a civil action" in Rule 2A:4(a) did nothing to eliminate—and certainly was not intended to eliminate—the requirement of formal service of process issued by a court. It simply was part of the broader change in the Rules at that time to reflect the merger of the procedural rules and terminology regarding legal and equitable claims.

### C.  Additional Considerations

"Process is an official notice informing the recipient of a pending action filed and advising when a response is required." <u>Bendele ex rel. Bendele</u>, 29 Va. App. at 398, 512 S.E.2d at 829. This Court has previously held that the simple act of mailing to an agency a copy of a petition for appeal that has been filed with a court does not qualify as "process." <u>Id.</u> We reaffirm that holding today. Process, at least for purposes of Rule 2A:4(a), must be an official notice issued by a court, not simply information being shared from another source.

> The formality of process serves a legitimate purpose. Process is official notice which informs the opposing party of the litigation and instructs the party when and where it must respond. Without this official notice, the recipient knows neither if the action was filed nor when it was filed. The party would not know

when critical time limits expire.  Without process a party would
need to resort to other means to obtain essential information.

Id. at 399, 512 S.E.2d at 829.

Muse cites Virginia Retirement System v. Avery, 262 Va. 538, 551 S.E.2d 612 (2001), to

support its position, but Avery actually supports a different conclusion than that which Muse

would have us adopt.  Similar to Muse's actions in this case, "Avery mailed a 'courtesy copy' of

her petition for appeal to the secretary of VRS within the 30-day period required by Rule

2A:4(a)."  Id. at 540, 551 S.E.2d at 613.  Subsequently, "Avery sent a copy of a subpoena in

chancery and her petition for appeal by an express delivery service to the secretary of VRS."  Id.

The Supreme Court considered the second of these mailings and recognized that "process issued

by the clerk, together with Avery's petition for appeal, delivered by an express delivery service

to VRS was [not] a proper service of process."  Id. at 542, 551 S.E.2d at 614.  The Court then

proceeded to hold, however, that the defective service was cured under the provisions of Code

§ 8.01-288.  Id.

If the simple act of mailing a copy of a petition for appeal to an agency secretary is all

that Rule 2A:4(a) requires, the Court in Avery would have been able to simply say so.  However,

it is apparent from the analysis in Avery that the Supreme Court recognized that the mailing of a

"courtesy copy" of a petition for appeal to an agency secretary does *not* constitute service under

Rule 2A:4(a).  Furthermore, it is also apparent that such action does not even satisfy the relaxed

requirements of the curative statute, Code § 8.01-288.  That code section provides:

> Except for process commencing actions for divorce or
> annulment of marriage or other actions wherein service of process
> is specifically prescribed by statute, *process* which has reached the
> person to whom it is directed within the time prescribed by law, if
> any, shall be sufficient although not served or accepted as provided
> in this chapter.

Code § 8.01-288 (emphasis added).

The Supreme Court in <u>Avery</u> recognized that this statute applies in a situation where court-issued process has actually reached the agency secretary. However, <u>Avery</u> most certainly did *not* hold that Code § 8.01-288 applies when a person simply mails a copy of a petition for appeal—without any accompanying court-issued process—to an agency secretary. Thus, Muse's argument that Code § 8.01-288 applies to validate its act of mailing of a copy of its petition for appeal to the Board's secretary is without merit.[9] <u>See</u> <u>Bendele ex rel. Bendele</u>, 29 Va. App. at 399, 512 S.E.2d at 829 ("Cases that have applied Code § 8.01-288 involved process received by means other than service.").

Furthermore, Muse's contention that its actions constituted "process" under the definition of that term in Code § 8.01-285 is likewise unpersuasive. Code § 8.01-285 states, in relevant part: "For the purposes of this chapter: (1) The term 'process' shall be deemed to include notice . . . ." However, as this Court has already noted regarding this statute, "if process includes notice, it does not follow that any notice must constitute process. If a procedure requires that a party receive process, informal notice will not necessarily meet the requirement for process." <u>Bendele ex rel. Bendele</u>, 29 Va. App. at 400, 512 S.E.2d at 829. As we explained in detail above, the language of Rule 2A:4(a), when read together with Parts Two-A and Three of the Rules of the Supreme Court as a consistent whole, plainly prescribes that the agency secretary must be provided with formal process issued by a court, just as is required with the commencement of any other type of civil action. Notice of such formal court-issued process

---

[9] We do not consider whether Muse's later service of process on the Board's secretary was sufficient either to comply with Rule 2A:4(a) or to satisfy the curative provisions of Code § 8.01-288. Muse never made such an argument to the trial court, and Muse's counsel conceded at oral argument before this Court that the only issue in this case is whether the original mailing of a copy of Muse's petition for appeal constituted appropriate service. Moreover, we note that it appears Muse did not pay the fees for having formal process issued and served until after the 30-day deadline, thus failing to comply with Rule 2A:4(a)'s requirement that within the 30-day period for filing a petition for appeal, a party must pay all fees and take all appropriate steps to cause a copy of its petition to be served on the agency secretary.

- 14 -

may satisfy the requirements of Rule 2A:4(a), even though the process was not properly served, see Avery, 262 Va. at 542-43, 551 S.E.2d at 614-15, but "notice" that does not include notice of process actually issued by a court is simply not sufficient to satisfy the requirements of Rule 2A:4(a).

Muse contends that Rule 1:12 applies to the facts of this case, but this argument is also unpersuasive. Rule 1:12 is entitled, "Service of Papers after the Initial Process," and it provides, in relevant part:

> All pleadings, motions and other papers *not required to be served otherwise* and requests for subpoenas duces tecum shall be served by delivering, dispatching by commercial delivery service, transmitting by facsimile, delivering by electronic mail when Rule 1:17 so provides or when consented to in writing signed by the person to be served, or by mailing, a copy to each counsel of record on or before the day of filing.

The provisions of this Rule are inapplicable to the proceedings in this case because Rule 2A:4(a) plainly requires a petition for appeal "to be served otherwise," viz., "as in a civil action" in accordance with Rules 3:2, 3:3, and 3:4, which are the Rules regarding the commencement of civil actions and the accompanying issuance of a summons by a court and service of initial process. Furthermore, the title of Rule 1:12 demonstrates the Supreme Court's intent that the Rule's provisions apply only *after initial process* has been served. Cf. Hawkins v. Commonwealth, 255 Va. 261, 269, 497 S.E.2d 839, 842 (1998) ("A title may be read in an attempt to ascertain an act's purpose, though it is no part of the act itself."). Indeed, the Supreme Court has already recognized that Rule 1:12 "authoriz[es] service of papers *after* initial process through a 'commercial delivery service.'" Avery, 262 Va. at 542 n.2, 551 S.E.2d at 614 n.2 (emphasis in original). Thus, Rule 1:12 simply does not apply to the service of the initial process required to commence a judicial review of an administrative agency's decision.

We conclude by noting that administrative agencies are not part of the judicial branch of our system of government. See Va. Const. art. III, § 1 (providing that the General Assembly may create administrative agencies and prescribe their authority and duties); Code § 54.1-107 (providing that the Governor shall appoint the members of regulatory boards). Hence, any action taken by an administrative agency is not a judicial action. When a petitioner brings a court action requesting judicial review of a particular agency's conduct, the court of original jurisdiction is not reviewing a decision made in a judicial proceeding by an inferior judicial tribunal. This is why service of initial, court-issued process in such a case is appropriate and indeed necessary. We base our holding on the plain language of the statutory scheme of the VAPA and the Rules of the Supreme Court. However, we also note that our interpretation of Rule 2A:4(a) makes perfect sense, given the nature of the proceeding that is being instituted when a petitioner challenges an agency action in court, pursuant to Code § 2.2-4026. A court action to review the conduct of an administrative agency should be instituted with the same type of service of process as is required with the initiation of any other civil action, just as Rule 2A:4(a) plainly indicates.

III.  CONCLUSION

For the foregoing reasons, we conclude that Rule 2A:4(a) requires service of process in the same manner as is required with the commencement of any other civil action.  Therefore, we affirm the judgment of the trial court.[10]

Affirmed.

---

[10] We note that Muse did not argue below that the alleged error was not jurisdictional and thus that dismissal was an inappropriate disposition.  The trial court's final order stated that Muse's "failure to comply with a mandatory Rule . . . prevent[ed the trial court] from acquiring active jurisdiction over the appeal and subject[ed] the appeal to dismissal."  The record before us contains no argument by Muse articulating any type of challenge to this aspect of the trial court's ruling.  See Rule 5A:18.  Moreover, Muse has not argued to this Court that if there was any error under Rule 2A:4(a), it was not jurisdictional.  We generally will not consider arguments that are not properly briefed to us.  See Rule 5A:20(e).  Thus, we express no opinion as to whether dismissal was an appropriate disposition in this case.

Huff, J., with whom Elder and Beales, JJ., join, dissenting.

I respectfully dissent because the plain meaning of Rule 2A:4(a) does not specify that the petition for appeal must be served on the agency secretary as in the *commencement* of a civil action. Rather, it requires that an appellant "cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary and on every other party." Rule 2A:4(a). Thus, the plain meaning of Rule 2A:4(a) did not require Muse to serve the petition with process, as the majority asserts. Accordingly, Muse complied with the service requirements set forth in Rule 2A:4(a) by mailing a copy of the petition to the Board on November 10, 2010 pursuant to Rule 1:12 – "as in a civil action." Rule 2A:4(a).

As in any case involving an analysis of statutory meaning, we first consider whether the plain language of Rule 2A:4(a) evidences the Supreme Court's intent with regard to service of a petition for appeal. See Kessler v. Smith, 31 Va. App. 139, 144, 521 S.E.2d 774, 776 (1999) ("'Where the language of a [rule] is clear and unambiguous, we are bound by the plain statement of . . . intent.'" (alteration in original) (quoting Commonwealth v. Meadows, 17 Va. App. 624, 626, 440 S.E.2d 154, 155 (1994))). As noted above, Rule 2A:4(a) instructs an appellant, in pertinent part, to "tak[e] . . . all steps provided in Rules 3:2, 3:3 and 3:4 to cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary and on every other party."[11] The Board suggests that this language requires process to be served together with the petition for appeal. Such an interpretation, however, incorrectly reads Rule 2A:4(a) to require service with process as befitting the commencement of a civil action. To the contrary, the plain language of Rule 2A:4(a) simply requires that the petition be served "as in *a civil action*." (Emphasis added).

---

[11] Rule 2A:4(a) does not incorporate Rule 3:5, which governs the form of process.

Nothing in the rules justifies adding to the express language of Rule 2A:4(a). Prior to its amendment to accommodate the unification of law and equity, Rule 2A:4(a) required a party seeking an appeal in the circuit court "to cause a copy of the petition for appeal to be served (as in the case of a bill of complaint in equity)." Rule 2A:4(a) (1977) (amended 2006). A bill of complaint in equity was the initial pleading used to institute a new action in chancery, and therefore required service of process. Accordingly, in applying Rule 2A:4(a) prior to its amendment, the practice was to require service of process on the agency secretary in the form of a subpoena in chancery affixed to a copy of the filed petition for appeal. Bendele ex rel. Bendele v. Commonwealth, Dep't of Med. Assistance Servs., 29 Va. App. 395, 399, 512 S.E.2d 827, 829 (1999).

The 2006 amendment, however, departed from the requirement that service of the petition comply with the same procedural formalities as would apply to a new action. Rule 2A:4(a) (1977) (amended 2006). By its plain language, the amendment not only reflected the unification of law and equity but also eliminated any requirement that service of a petition for appeal mirror that required for a bill of complaint in equity or for a complaint at law. Rather than require service of a petition as in a *complaint* in a civil action, the amended rule's language now simply requires service "as in a civil action." Rule 2A:4(a). Thus, in relaxing the language of the amended rule to include ongoing actions, the Supreme Court plainly removed the requirement that process accompany the petition in an appeal of an agency's case decision.

Furthermore, the majority's reference to the Judicial Council of Virginia's 2004 Report to the General Assembly and Supreme Court of Virginia ("Report") for guidance does not support supplementation of the plain meaning of the rule. First, the Report is not an appropriate substitute for legislative history and might assist only if the meaning of the rules were ambiguous. Second, although the Report covers a myriad of topics, it does not specifically

reference Rule 2A:4(a) nor does it suggest an amendment to that rule. Thus, the majority's reliance on the Report is misplaced.

Addressing the rules in concert with the VAPA, as the majority does,[12] I note that Part 2A of the rules governs "appeals pursuant to the Administrative Process Act" and is "promulgated pursuant to § 2.2-4026 of the Code of Virginia." Rule 2A:1(a). Code § 2.2-4026 specifically provides that a "party aggrieved by and claiming unlawfulness of a case decision . . . shall have a right to the direct review thereof by an appropriate and timely court action against the agency or its officers or agents in the manner provided by the rules of the Supreme Court of Virginia." The rules, in turn, refer to the "review" of an agency's case decision as a "direct appeal." Rule 2A:1(a); see Rules 2A:2, 2A:3, and 2A:4 (providing for a notice of appeal, a petition for appeal, and a record on appeal); see also J.P. v. Carter, 24 Va. App. 707, 721, 485 S.E.2d 162, 169 (1997) (noting that the circuit court reviews an agency's case decision in a manner "equivalent to an appellate court's role in an appeal from a trial court," and thus, "[i]n this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal" (quoting Sch. Bd. v. Nicely, 12 Va. App. 1051, 1062, 408 S.E.2d 545, 551 (1991))). Under the VAPA, therefore, this review is an extension of the underlying cause initiated before the agency and is not the commencement of a new action.

Furthermore, other provisions of the VAPA support the conclusion that an administrative appeal is a continuation of a proceeding that began at the agency as opposed to a new action. By the time this appeal was made to the circuit court, the Board was already aware of the case and had participated in the informal fact-finding conference conducted by a member of the Department of Professional and Occupational Regulation. Oral Argument at 16:43, Muse

---

[12] I analyze the VAPA because the majority interprets the VAPA's language and purpose to indicate that a review of an agency's case decision constitutes a new action.

<u>Constr. Grp., Inc. v. Commonwealth Bd. for Contractors</u>, __ Va. App. __, __, __ S.E.2d __, __ (2012) (en banc). Once the facts were conclusively established following the agency's decision, the circuit court, pursuant to Code § 2.2-4027, was precluded from substituting its judgment on factual issues. Moreover, pursuant to Code § 2.2-4029, the circuit court was only permitted to affirm, dismiss, or remand the action to the agency from which it originated. These examples demonstrate that the circuit court's role is – just as this Court has previously stated – that of an appellate tribunal. <u>See</u> Rule 2A:1(a) ("These rules . . . shall apply to the review of, *by way of direct appeal from*, . . . the decision of a case by an agency." (emphasis added)).

Thus, Rule 2A:4(a) and the VAPA treat the circuit court's review of an agency's case decision as a continuation of the agency action, and do not require that an appellant serve the petition upon the agency secretary with process. Rather, the Supreme Court's removal of the requirement in Rule 2A:4(a) that an appellant serve the petition "as in the case of a bill of complaint in equity" permits service to be performed pursuant to Rule 1:12. Since appellant served the petition by mail on the date of filing, I would reverse the circuit court's decision and remand the case to the circuit court for it to consider the appeal on the merits, acting in its appellate capacity in this appeal of an administrative agency's findings.

# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **5th** *day of* **June, 2012**.

Muse Construction Group, Inc., Appellant,

against       Record No. 1134-11-2
           Circuit Court No. CL10-000918-00

Commonwealth of Virginia Board for Contractors and
   Warren and Beverly Wharton, Appellees.

Upon a Petition for Rehearing En Banc

Before Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, Petty, Beales, Alston, McCullough and Huff

On May 15, 2012 came the appellees, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on May 1, 2012, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on May 1, 2012 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. It is further ordered that the appellees shall file twelve additional copies of the appendix previously filed in this case. In addition, any party represented by counsel shall file twelve electronic copies of their brief (and the appendix, if the party filing the appendix is represented by counsel) with the clerk of this Court.

The electronic copies must be filed on twelve separate CDs or DVDs and must be filed in Adobe Acrobat

Portable Document Format (PDF).[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

*original order signed by a deputy clerk of the*
By: *Court of Appeals of Virginia at the direction*
*of the Court*

Deputy Clerk

---

[1] The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

Present:   Judges Petty, Beales and Huff
Argued at Richmond, Virginia


MUSE CONSTRUCTION GROUP, INC.

                                                            OPINION BY
v.        Record No. 1134-11-2                    JUDGE GLEN A. HUFF
                                                            MAY 1, 2012

COMMONWEALTH OF VIRGINIA BOARD
 FOR CONTRACTORS AND WARREN
 AND BEVERLY WHARTON


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

George H. Dygert (Dygert, Wright, Hobbs & Heilberg, PLC, on
briefs), for appellant.

Steven P. Jack, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee
Commonwealth of Virginia Board for Contractors.

No brief or argument for appellees Warren and Beverly Wharton.


Muse Construction Group, Inc. ("appellant") appeals the Circuit Court of Albemarle

County's ("circuit court") decision dismissing appellant's appeal of a final decision of the

Commonwealth of Virginia Board for Contractors ("Board").  On appeal, appellant contends that

the circuit court erred in finding that its petition for appeal was not served on the Secretary of the

Board ("agency secretary") in accordance with the Rules of the Supreme Court of Virginia.  For

the following reasons, we reverse and remand.

## I.  BACKGROUND

The facts relevant to this appeal are as follows.  After conducting an investigation,

holding an informal fact-finding conference, and reporting its findings relating to alleged

violations resulting from appellant's contract to build a house, the Board entered a final order and opinion revoking appellant's contracting license on September 21, 2010.

On October 22, 2010, appellant timely filed a notice of appeal with the Board. On November 10, 2010, appellant timely filed a petition for appeal with the circuit court and mailed a copy of the petition by certified mail to the agency secretary, which the agency secretary received on November 12, 2010.

On February 7, 2011, appellant received a copy of the Board's special plea in bar for lack of jurisdiction, in which the Board contended that appellant had not properly served the agency secretary in accordance with Rule 2A:4. On February 8, 2011, appellant contacted the clerk of the circuit court and requested that the circuit court provide service of appellant's petition for appeal on the agency secretary, which the agency secretary received on February 25, 2011.

On March 3, 2011, the Board filed a motion to dismiss with the circuit court alleging appellant failed to take the necessary steps to perfect service on the agency secretary within the thirty-day period prescribed by Rule 2A:4. On May 31, 2011, the circuit court dismissed the case for "failure to take the steps required by Rules 3:2, 3:3 and 3:4 of the Rules of the Supreme Court of Virginia for filing and service of a complaint to commence a civil action to have the petition for appeal served with process upon the agency secretary . . . as required by Rule 2A:4(a) . . . ." This appeal followed.

## II. STANDARD OF REVIEW

In reviewing the circuit court's interpretation of the Rules of the Supreme Court of Virginia, we apply a *de novo* standard of review. See Va. Ret. Sys. v. Avery, 262 Va. 538, 543, 551 S.E.2d 612, 615 (2001).

## III. ANALYSIS

Appellant contends that the circuit court erred in dismissing its appeal for lack of jurisdiction after finding that the petition for appeal was not served on the agency secretary in accordance with Rule 2A:4. Appellant further asserts that Code § 8.01-288 cures any defect in service because the agency secretary received the petition for appeal within the prescribed time period. Because we agree with appellant's contention that its service by certified mail of the petition for appeal satisfied the requirements of Rule 2A:4, we do not reach appellant's argument for the application of Code § 8.01-288.

Rule 2A:4 provides, in pertinent part, that

> [w]ithin 30 days after the filing of the notice of appeal, the appellant shall file a petition for appeal with the clerk of the circuit court named in the first notice of appeal to be filed. Such filing shall include within such 30-day period both the payment of all fees and the taking of all steps provided in Rules 3:2, 3:3 and 3:4 to cause a copy of the petition for appeal *to be served (as in a civil action)* on the agency secretary and on every other party.

(Emphasis added).

Rule 2A:4 requires a party seeking an appeal in the circuit court "to cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary and on every other party" – *not* "to cause a copy of the petition for appeal to be served (as in *the case of a bill of complaint in equity*)," as it did prior to its amendment in 2006. Rule 2A:4 (1977) (amended 2006). A bill of complaint in equity was the initial pleading used to institute a new action in chancery, and therefore required service of initial process by a process server. Thus, in applying Rule 2A:4 prior to its amendment, the practice was to require service of process on the agency secretary in the form of a subpoena in chancery affixed to a copy of the filed petition for appeal,

served by a process server.[1]  Bendele v. Commonwealth, 29 Va. App. 395, 399, 512 S.E.2d 827, 829 (1999).  See generally Kessler v. Smith, 31 Va. App. 139, 521 S.E.2d 774 (1999).

In conjunction with the merger of law and equity in 2006, the amendment to Rule 2A:4 removed the requirement that service of the petition for appeal comply with the same procedural formalities as would apply to the institution of a new action.  Rule 2A:4 (1977) (amended 2006).  Because the Supreme Court "is presumed to be aware of the decisions of this Court" that addressed Rule 2A:4 prior to its amendment, Waterman v. Halverson, 261 Va. 203, 207, 540 S.E.2d 867, 869 (2001) (citation omitted), and is presumed to have "chose[n] with care the words it used," Saunders v. Commonwealth, 48 Va. App. 196, 203, 629 S.E.2d 701, 704 (2006), we find that the Supreme Court specifically chose to amend Rule 2A:4 to require that "service" be "as in a civil action."  Further, the Supreme Court's choice of words evidences a departure from the prior practice that service by a process server be performed "as in the case of a bill of complaint in equity."  Rule 2A:4 (1977) (amended 2006); see Kessler, 31 Va. App. at 144, 521 S.E.2d at 776 ("'Where the language of a [rule] is clear and unambiguous, we are bound by the plain statement of . . . intent.'" (citation omitted)); see also Code § 8.01-3.  Thus, the Supreme Court plainly removed the requirement that an agency secretary be served by a process server on an appeal of an administrative agency's case decision.[2]

---

[1] Rule 2A:4 adopts by reference Rules 3:2, 3:3, and 3:4, and directs that they be used "to cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary . . . ."  Rule 2A:4 imposes no requirement for issuance of a summons or process.  Even if such were required, Rule 3:2(c)(i) delegates such duty to the clerk of the circuit court.  Kessler v. Smith, 31 Va. App. 139, 144, 521 S.E.2d 774, 776 (1999).

[2] The rules governing appeals pursuant to the Virginia Administrative Process Act ("VAPA") are promulgated pursuant to Code § 2.2-4026.  Rule 2A:1(a).  In drafting the Rules, the Supreme Court referred to the review of an agency's case decision as a "direct appeal."  Rule 2A:1(a); see Rules 2A:2, 2A:3 and 2A:4 (providing for a notice of appeal, a petition for appeal, and a record on appeal); see also J.P. v. Carter, 24 Va. App. 707, 721, 485 S.E.2d 162, 169 (1997) (noting that the circuit court reviews an agency's case decision in a manner "'equivalent to an appellate court's role in an appeal from a trial court,'" and thus, "'[i]n this sense, the

- 4 -

Because the amendment changed the service requirement to conform to the general rules applicable "in a civil action," it follows that "service" can be accomplished pursuant to Rule 1:12 if the parties are already at issue by the time an appeal is made to the circuit court. See Avery, 262 Va. at 543 n.2, 551 S.E.2d at 614 n.2 (declining to address whether service conformed to the amended language of Rule 1:12, which allows for delivery by a commercial delivery service, given that service had occurred prior to the amendment). In the case at bar, the parties had been at issue for months prior to appellant's appeal to the circuit court. Rule 2A:4 therefore does not require service of process – i.e. a summons, affixed to the petition for appeal, served by a process server – as would be needed to *institute a new* action. Accordingly, we find Rule 1:12 applicable in this case.

Rule 1:12 provides, in pertinent part, that

> [a]ll pleadings, motions and other papers not required to be served otherwise and requests for subpoenas duces tecum shall be served by delivering, dispatching by commercial delivery service, transmitting by facsimile, delivering by electronic mail when Rule 1:17 so provides or when consented to in writing signed by the person to be served, or by mailing, a copy to each counsel of record on or before the day of filing.

In this case, appellant timely filed a petition for appeal with the circuit court on November 10, 2010. On the date of filing, appellant also mailed a copy of the petition to the agency secretary by certified mail. The agency secretary received a copy of appellant's petition

---

General Assembly has provided that a circuit court acts as an appellate tribunal'" (quoting Sch. Bd. v. Nicely, 12 Va. App. 1051, 1062, 408 S.E.2d 545, 551 (1991))). Neither the Rules nor the statute express that such an appeal is a new action. Accordingly, the plain meaning of the Rules, read in concert with VAPA, distinguishes a direct review of an agency's case decision from a new action, which would require service by a process server.

The dissent has expressed concern that our reading of Code § 2.2-4026 as it applies to the review of an agency's case decision may create a "procedural nightmare" in adjudicating reviews of the adoption of a regulation under the same statutory provision. Infra at 18. Our holding, however, is limited to the context of an agency's case decision where the parties are already at issue.

for appeal on November 12, 2010.  Because Rule 2A:4 does not require that the petition for appeal be served by a process server, we conclude that appellant complied with Rule 2A:4 by serving a copy of the petition on the agency secretary pursuant to Rule 1:12 within the prescribed time period.  Further, it does not appear from the record before us on appeal that any required fees went unpaid or that any steps required in Rules 3:2, 3:3, and 3:4 were not taken during that thirty-day period.  See Rule 2A:4 (requiring "within such 30-day period both the payment of all fees and the taking of all steps provided in Rules 3:2, 3:3 and 3:4 to cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary and on every other party").  Therefore, the circuit court erred in ruling that it was divested of jurisdiction over the appeal.

## IV.  CONCLUSION

Because we find that appellant complied with the requirements for serving its petition for appeal on the agency secretary pursuant to Rule 2A:4, we hold that the circuit court erred in ruling that it was divested of jurisdiction over the appeal.  Accordingly, we reverse the circuit court's decision and remand the case to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.

Petty, J., dissenting.

Muse presents a simple, direct issue to this Court on appeal: whether the mailing, by certified mail, of a copy of the petition for appeal to the secretary of the Board of Contractors constituted service under Rule 2A:4 of the Rules of Court.[3] The underlying premise of the majority's affirmative conclusion is that the 2006 amendment to Rule 2A:4 was a substantive amendment intended to fundamentally change the nature of the judicial review provided by the Virginia Administrative Process Act (VAPA). In so doing, the majority implicitly assumes that the initial pleading in this case was served when the Board served Muse with a complaint initiating the administrative action against Muse. The majority then reasons that Rule 1:12 allows the petition for appeal to be served by mailing because it is not the initial process referred to in the title of the rule. Thus, according to the majority, the judicial review authorized by Code

---

[3] I do not believe this Court should address anything beyond the narrow question of whether mailing the petition for appeal to the agency secretary is sufficient to have the petition "served" on the secretary in compliance with Rule 2A:4. That is the only argument that Muse raised in the proceeding below, as exemplified by Muse's memorandum in opposition to the Board's motion to dismiss. In the proceeding below, Muse never raised the issue of whether it had otherwise cured defective service under Code § 8.01-288, or whether filing the petition for appeal within the thirty-day time period set forth in Rule 2A:4 was sufficient to comply with the rule, as discussed in Kessler v. Commonwealth, 31 Va. App. 139, 144-45, 521 S.E.2d 774, 776 (1999) (holding that the filing of a petition for appeal in that window, without more, was sufficient to comply with a previous version of Rule 2A:4). Thus, we are barred from reviewing these issues on appeal under Rule 5A:18. Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998).

Additionally, Muse has not adequately raised these issues before us on appeal. Besides a simple quotation of Code § 8.01-288, Muse does not explain the application of Code § 8.01-288 to the facts of this case in its brief. That omission is significant. Muse does not suggest that it cured its defective service, or that it otherwise complied with Rule 2A:4, the issue of proper service aside. Muse raises only the issue of whether its mailing was proper service on the agency secretary. Accordingly, Rule 5A:20(e) precludes this Court from addressing any issue beyond this narrow one. See Fadness v. Fadness, 52 Va. App. 833, 850, 667 S.E.2d 857, 865-66 (2008) (Under Rule 5A:20(e), "'[a] court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research.'" (quoting People v. Trimble, 537 N.E.2d 363, 364 (Ill. App. Ct. 1989))); see also Atkins v. Commonwealth, 57 Va. App. 2, 20, 698 S.E.2d 249, 258 (2010) (holding that a significant omission with respect to Rule 5A:20(e) results in waiver of an argument).

§ 2.2-4026 is merely a continuation of the ongoing litigation before the agency. Only by adopting that premise can the majority conclude that "the parties had been at issue for months prior to appellant's appeal to the circuit court" and that "Rule 2A:4 therefore does not require service of process . . . as would be needed to *institute* a *new* action." Supra at 5 (emphasis in original). Because I believe the majority is incorrect in its interpretation of both the VAPA and Rule 2A:4, I respectfully dissent.

I begin with the relevant rules of statutory interpretation. When this Court interprets a statute, it must give effect to the intent of the legislature, Reston Hosp. Ctr. v. Remley, 59 Va. App. 96, 106, 717 S.E.2d 417, 423 (2011), and when it interprets the rules, it must give effect to the intent of the Supreme Court, the body that adopted them, see id.; cf. Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010) (explaining this principle in the context of statutes reviewed by this Court). To that end, this Court's interpretation of a statute or a rule is controlled by "[t]he plain language used by the [governmental actor adopting it], unless that language is ambiguous or otherwise leads to an absurd result." See Reston, 59 Va. App. at 106, 717 S.E.2d at 422-23; see also Evans, 280 Va. at 82, 685 S.E.2d at 176 ("When the language of a statute [or rule] is unambiguous, we are bound by the plain meaning of that language."). Moreover, we do not read any particular statute or rule in isolation; either must always be understood against the overall scheme created in tandem with other related statutes and rules. See Reston, 59 Va. App. at 106, 717 S.E.2d at 422-23; see also Alston v. Commonwealth, 274 Va. 759, 769, 652 S.E.2d. 456, 462 (2007) ("'It is a cardinal rule of construction that statutes [or rules] dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished.'" (quoting Prillaman v. Commonwealth, 199 Va. 401, 406, 100 S.E.2d 4, 7 (1957))).

There are several sound reasons for looking to the VAPA as the starting point in any analysis involving judicial review of administrative actions. First, the VAPA is important because it authorizes the promulgation of Rule 2A:4. Rule 2A:1(a) (stating that the rules under Section 2A "are promulgated pursuant to § 2.2-4026 of the Code of Virginia," the relevant section of the VAPA); see Code § 2.2-4026 (authorizing the institution of a court action to review an agency action "in the manner provided by the rules of the Supreme Court of Virginia"). Moreover, a plain reading of the VAPA contradicts the scantly supported proposition by the majority that a review of an agency decision is not "the institution of a new action." Supra at 4. Under the VAPA,

> [a]ny person affected by and claiming the unlawfulness of any
> regulation, or party aggrieved by and claiming unlawfulness of a
> case decision . . . shall have a right to the direct review thereof by
> an *appropriate and timely court action* against the agency or its
> officers or agents in the manner provided by the rules of the
> Supreme Court of Virginia.

Code § 2.2-4026 (emphasis added). Any such action "may be *instituted* in any court of competent jurisdiction" where venue is proper, "and the judgments of the courts of *original jurisdiction* shall be subject to appeal to or review by higher courts as in other cases unless otherwise provided by law." Id. (emphasis added).

The particular language used by the legislature here demonstrates its intent to give a person who is subject to an unfavorable decision of an executive branch agency the right to seek relief through the judicial branch by filing a *new action* in the courts of the Commonwealth. In other words, by enacting the VAPA, the legislature authorized certain persons to file suit against an executive branch agency. Code § 2.2-4026 speaks not of an appeal from the agency as an inferior tribunal, but rather of the "institution" of a "court action against the agency" in a "court[] of original jurisdiction." Moreover, subsequent sections of the VAPA referring to the action described in Code § 2.2-4026 do not refer to the proceeding as an appeal from an inferior

- 9 -

tribunal, but instead describe it as a "review action," or otherwise treat it as a separate lawsuit. See Code § 2.2-4027 (describing how a court of original jurisdiction must treat the agency's decision "in the review action"); Code § 2.2-4029 (describing the permissible dispositions in "the review action"); Code § 2.2-4030(A) (describing the proceeding as a "civil case" involving a "person [that] contests [an] agency action"); Code § 2.2-4030(B) (noting that the lawsuit authorized by this section of the VAPA should not be construed as authorizing suit where the agency is otherwise "immune from suit," i.e., based on sovereign immunity).[4] Even this Court has previously described an administrative "appeal" to the circuit court like the one at issue here not as an actual appeal but rather as an "action[]" by which an agency "can be sued." Va. Bd. of Med. v. Va. Physical Therapy Ass'n, 13 Va. App. 458, 465, 413 S.E.2d 59, 64 (1991) (analyzing the issue of sovereign immunity in suits of this kind and holding that "[t]he VAPA expressly provides two *actions* that allow agencies *to be sued*: (1) the adoption of rules, and (2) case decisions" (emphasis added)). Accordingly, it is apparent that the legislature viewed the right created in Code § 2.2-4026 not as a right of appeal from an administrative proceeding before an executive branch agency where "the parties are already at issue," supra at 5, but rather as a cause of action enabling a person to challenge an executive branch agency decision for the first time before the judicial branch.

In light of this clear intent of the legislature in enacting the VAPA, the intent of the Supreme Court in adopting Rule 2A:4 pursuant to the VAPA is even clearer. Rule 2A:4 plainly requires a party seeking to institute a court action against an agency to "file a petition for appeal

---

[4] Indeed, Code § 2.2-4026 is an express but limited waiver of an agency's sovereign immunity that would otherwise prohibit a party from filing suit to seek judicial review. Va. Bd. of Med. v. Va. Physical Therapy Ass'n, 13 Va. App. 458, 465-66, 413 S.E.2d 59, 63-64 (1991). If, as the majority concludes, an action under Code § 2.2-4026 is simply an appeal of an agency decision in a proceeding originally instituted by the agency, waiver of sovereign immunity would hardly seem necessary.

with the [appropriate] clerk of the circuit court." The filing must include "both the payment of all fees and the *taking of all steps provided in Rules 3:2, 3:3 and 3:4* to cause a copy of the petition for appeal *to be served (as in a civil action)* on the agency secretary . . . ." Rule 2A:4 (emphasis added). Rule 3:2 describes *commencing* a civil action, either by "filing a complaint," or, as required here, "by [filing] a pleading styled 'Petition'" "in the clerk's office." Once filed, "the action is then *instituted* and pending as to all parties defendant thereto," and the person filing the complaint must pay certain fees "before *the summons is issued*" by the clerk. Rule 3:2 (emphasis added). Rules 3:3 and 3:4 describe the filing of pleadings and their service *by the clerk*. As if the language in Rule 3:2 mentioning the issuance of a summons is not clear enough, Rule 3:5 requires the clerk to serve process in the form of a summons once an action is commenced. Moreover, Rule 3:5 clearly establishes that the process in a civil action must be signed and issued by the clerk. Thus, the rules, properly understood along with the VAPA, treat a review action much like any other civil action commenced in a circuit court, at least insofar as service of process is concerned.

Furthermore, other rules dealing with the VAPA make it clear that process must be served on the agency secretary to commence the review action at issue here. Language in Rule 2A:2, dealing with sending a notice of appeal to the agency secretary, makes it clear that the Supreme Court recognized a difference between mailing and service of process and that it did not intend to allow the mere mailing of the petition for appeal to substitute for proper service under Rule 2A:4. Rule 2A:2(b) expressly mentions service by mail. It states:

> Any party appealing from a regulation or case decision shall file, within 30 days after adoption of the regulation or after service of the final order in the case decision, with the agency secretary a notice of appeal signed by him or his counsel. . . . [The notice] shall conclude with a certificate that a copy of the notice of appeal has been *mailed* to each of the parties. Any copy of a notice of appeal that is sent to a party's counsel or to a party's registered

- 11 -

> agent, if the party is a corporation, shall be deemed adequate and
> shall not be a cause for dismissal of the appeal.

Rule 2A:2(b) (emphasis added). "When interpreting statutory language, we must assume that the legislature chose with care the words it used and, where it includes specific language in one section but omits that language from another section, we presume that the exclusion of the language was intentional." Saunders v. Commonwealth, 48 Va. App. 196, 203-04, 629 S.E.2d 701, 704 (2006). Rule 2A:2 expressly permits the mailing of the notice of appeal to the agency, yet Rule 2A:4 includes no analogous language. It is clear to me that had the Supreme Court intended to authorize service by mail in Rule 2A:4 it would have used the language it included in Rule 2A:2. The fact that it chose not to do so leads me to conclude it did not intend mailed service to suffice.

It is important that we consider these other Rules, since "'[i]t is a cardinal rule of construction that statutes [or rules] dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished.'" Alston, 274 Va. at 769, 652 S.E.2d at 462 (quoting Prillaman, 199 Va. at 406, 100 S.E.2d at 7). Rule 2A:3(b) expressly contemplates that compliance with Rule 2A:4 requires the service of process on the agency secretary. In describing the action required of the agency secretary after it receives a notice of appeal from a party subject to a case decision, Rule 2A:3(b) states:

> The agency secretary shall prepare and certify the record as soon
> as possible after the notice of appeal and transcript or statement of
> testimony is filed and served. Once the court has entered an order
> overruling any motions, demurrers and other pleas filed by the
> agency, or if none have been filed within the time provided by
> Rule 3:8 for the filing of a response *to the process served under
> Rule 2A:4*, the agency secretary shall, as soon as practicable or
> within such time as the court may order, transmit the record to the
> clerk of the court named in the notice of appeal.

(Emphasis added). In addition to Rule 2A:3's compelling reference to Rule 2A:4 and the process it requires, Rule 2A:3 also references Rule 3:8 in tandem with its reference to Rule 2A:4. Rule

- 12 -

3:8(a) states, in relevant part, that "the defendant shall file pleadings in response within 21 days *after service of the summons and the complaint [or petition]* on the defendant." (Emphasis added). These rules, when read together, all plainly support the proposition that service of process on the agency secretary is required under Rule 2A:4.[5]

I turn next to the majority's reliance on Rule 1:12. Since the majority views the proceeding before the circuit court below as merely continuing the action that was originally initiated by the administrative agency, the majority treats Muse's certified mailing of the petition for appeal as if it were any other subsequent pleading that might properly be served by mailing under Rule 1:12. There are several reasons why I believe that the majority's reliance on Rule 1:12 is misplaced.

First, despite the majority's assertion, Rule 1:12 does not authorize service of pleadings by mail where the parties are "already at issue," supra at 5; rather, Rule 1:12 provides that "[a]ll pleadings, motions, and other papers" may be served according to its directives if "not required to be served otherwise." Rule 2A:4 plainly requires a pleading "to be served otherwise." Thus, Rule 1:12 actually defers to the directive set forth in Rule 2A:4, not the other way around. The majority ignores this plain reading and, in fact, creates a bizarre paradox, whereby Rule 2A:4 apparently defers to Rule 1:12, but Rule 1:12 defers back to Rule 2A:4. This strained reading is avoided by simply acknowledging that Rule 1:12, by its plain terms, does not control where another rule, like Rule 2A:4, sets forth the manner of service.

Second, the majority's reliance on Rule 1:12 is troublesome considering that Rule 2A:4 enumerates other specific rules, and Rule 1:12 is not among those rules. The rules explicitly set forth in Rule 2A:4—Rules 3:2, 3:3, and 3:4—describe *commencing* an action. In contrast, Rule 1:12 plainly applies in other circumstances. Had the Supreme Court intended for Rule 1:12 to

---

[5] Again, process under Part Three of the Rules is, by definition, a summons. Rule 3:5.

apply to the initiation of an agency review action, it would have cited directly to Rule 1:12 in Rule 2A:4, not to those rules particularly describing how to *commence* an action in the first place.

Third, the title of Rule 1:12 demonstrates the Supreme Court's intent that the rule apply after *initial process* is served. The title of Rule 1:12 is "Service of Papers after the Initial Process." Although the title is not an operative part of the rule, it nonetheless may be used to construe its purpose. See Hawkins v. Commonwealth, 255 Va. 261, 269, 497 S.E.2d 839, 842 (1998) ("A title may be read in an attempt to ascertain an act's purpose, though it is no part of the act itself."). The title illuminates the obvious purpose of Rule 1:12—to facilitate the easy communication of court documents between parties after one party has served the other with the initial process. See Va. Ret. Sys. v. Avery, 262 Va. 538, 543 n.2, 551 S.E.2d 612, 614 n.2 (2001) (noting that Rule 1:12 was amended in 1999 to authorize "service of papers *after* initial process through a 'commercial delivery service'" (emphasis in original)). That purpose makes it clear that the Supreme Court intended for a party initiating a review action to serve process on the agency secretary, and not to allow for the application of the further provisions of Rule 1:12 before service of that initial process.

For the above reasons, the Rules are quite clear that a person instituting a review action, as Muse did here, must, within 30 days after the filing of a notice of appeal, pay all fees and take all steps necessary to cause the clerk of the circuit court to serve both a copy of the petition and a summons on the agency secretary. Thus, simply mailing the agency secretary a copy of the petition for appeal by certified mail, as Muse did, is insufficient to cause the petition to be "served" on the secretary in compliance with Rule 2A:4.

Finally, given what I perceive to be the clear meaning of the VAPA and the Rules, I would not even resort to examining the history of the Rules, as the majority has done. The

majority's choice to go down that path, however, leads me to comment upon what I believe to be the flaw in that analysis. I think it simply wrong to suggest that the 2006 amendment to Rule 2A:4 was a substantive change, or in the words of the majority, that the amendment "evidences a departure from the prior practice that service by a process server be performed." Supra at 4. I come to this conclusion for three reasons.

First, the 2006 amendments to the Rules were an omnibus series of amendments merging the previously distinct procedures in courts of equity and courts of law together to create uniform rules of practice. As Rule 3:1 states, "There shall be one form of civil case, known as a civil action." Given this change in Virginia court practice, "the procedural provisions in Parts Two and Three of the Rules of the Supreme Court [were] harmonized." Kent Sinclair, Guide to Virginia Law & Equity Reform and Other Landmark Changes § 1.01(C) (2006); see also Judicial Council of Va., Report to the General Assembly and Supreme Court of Virginia 42 (2004), available at http://www.courts.state.va.us/courtadmin/judpolicies/2004_jcv_report.pdf (noting that the amendment to the "Rules of Court provide that there will be one form of action in the Virginia courts, called a civil action, and that the procedural provisions in Parts Two and Three of the Rules of the Supreme Court be harmonized"). Thus, "New Part Three of the Rules . . . melds existing Parts Two and Three into a single roster of *procedural* rules applicable to both legal and equitable claims." Sinclair, supra, § 1.01(C) (emphasis added). Accordingly, the Rules made no substantive change to legal or equitable principles—the concepts themselves were not merged, but simply their procedural practice. Judicial Council of Va., supra, at 42-43; Sinclair, supra, § 1.01(C)(1). "Apart from creating a single 'side' at the circuit court level, no expansion or contraction of powers of any court, *or of claims properly heard therein*, . . . result[ed]. []Nor [were] venue, forum non conveniens, or *service of process rules . . . affected in any way*" by the pleading reform. Judicial Council of Va., supra, at 43 (emphasis added); see also Sinclair, supra,

- 15 -

§ 1.01(C)(2) (using almost exactly the same words to describe the amendments to the Rules of Court).  Thus, the 2006 amendments merely changed the wording of several rules to account for this change in practice.  See, e.g., Rule 3:2 (now describing the commencement of "[a] civil action"); Rule 3:4 (now explaining that the plaintiff is required to furnish the clerk with copies of the "complaint"); Rule 3:8 (now identifying answers to a "complaint").  Accordingly, the Supreme Court did not intend to substantively change Rule 2A:4 or its service requirements when it amended the rule in 2006.

Second, the fact that a review action is now filed in a court of law rather than a court of equity makes no difference in determining whether this is a new judicial action or a mere continuation of the administrative proceeding.  The majority recognizes that under the previous language of Rule 2A:4 the judicial review of an agency decision was a new proceeding when it states that the filing of "[a] bill of complaint in equity was the initial pleading used to institute a new action in chancery."  Supra at 3.  I fail to see how the 2006 amendments that did nothing more than streamline the procedural rules changed this fact.  The key distinction is not that a person seeking review of an agency action once dealt with a court of equity, but rather that, under either the old practice or the current practice, he must deal with any *court* at all.  It is that process—going from an administrative agency to a court—that demonstrates the initiation of new action.  Therefore, the change that now requires a person to effect service "as in a civil action" rather than "as in the case of a bill of complaint in equity" is a mere distinction without a difference.

Third, regardless of any difference between the old equity procedure and the now unified procedure, the fact remains that the Supreme Court modified only the language regarding the kind of court to file the action in, not *whom* to file it with, and importantly, not what that actor is required to do with it.  Under the old Rule, the party still had to "'file his petition for appeal with

- 16 -

the clerk of the circuit court.'"  Bendele v. Commonwealth, 29 Va. App. 395, 397 n.1, 512

S.E.2d 827, 828 n.1 (1999) (quoting the pre-amendment version of Rule 2A:4).  "'Such filing

[was required to] include all steps provided in Rules 2:2 and 2:3 *to cause a copy of the petition to*

*be served* (as in the case of a bill of complaint in equity) on the agency secretary and on every

other party.'"  Id. (quoting the pre-amendment version of Rule 2A:4).  Likewise, under the new

rule, the party must "file his petition for appeal with the clerk of the circuit court" within thirty

days of the filing of the notice of appeal.  Rule 2A:4.

> Such filing shall include within such 30-day period both the
> payment of all fees and the taking of all steps provided in Rules
> 3:2, 3:3 and 3:4 *to cause a copy of the petition for appeal to be*
> *served* (as in a civil action) on the agency secretary and on every
> other party.

Id. (emphasis added).  Hence, the Supreme Court did not amend the requirement that the person

take all steps necessary for the *clerk of court* to "cause a copy of the petition to be served . . . on

the agency secretary," evidencing a clear intent by the Supreme Court not to change Rule 2A:4

substantively.

Although not a part of my analysis, I must at least mention the practical, albeit perhaps

unintended, consequence of the majority's holding.  According to the majority, when an agency

receives a mere copy of a petition for appeal in the mail, both it and the Attorney General must

take action to file a response even though the notice of appeal may not yet have been filed with

the court.  As the Board of Contractors mentioned at oral argument, it regularly receives such

correspondence that never materializes into actual court proceedings.  The certainty attendant to

a court summons provides a necessary check against litigious parties and allows the agency to

limit its responses to petitions that have actually been filed with the clerk of court.  See Bendele,

29 Va. App. at 399, 512 S.E.2d at 829 ("The formality of process serves a legitimate purpose.

Process is official notice which informs the opposing party of the litigation and instructs the

party when and where it must respond. Without this official notice, the recipient knows neither if the action was filed nor when it was filed."). Without that check, the Commonwealth will now needlessly waste resources defending against phantom lawsuits.

Moreover, this procedural nightmare is amplified by the problem posed by challenges to regulations. This case involves a challenge to an agency case decision directed at a specific person. However, Code § 2.2-4026 plainly treats the review of a case decision and the review of the adoption of a regulation the same. Yet, there is no previous "party at issue" in the latter. A regulation may be challenged by "[a]ny person affected by and claiming the unlawfulness of any regulation." Code § 2.2-4026. In holding as it has, the majority has created two different types of service under Rule 2A:4 depending on whether there is a "party at issue" before the agency. While the majority attempts to limit its holding to "an agency's case decision where the parties are already at issue," supra at 4 n.2, Code § 2.2-4026 makes no such distinction. Clearly, the Supreme Court could never have foreseen nor intended such consequences when it amended Rule 2A:4 to conform to the merger of law and equity procedures.

In light of the foregoing, I believe that the majority has incorrectly interpreted the law set forth under the relevant portions of the VAPA and the Rules of the Supreme Court of Virginia. In my view, Muse did not comply with Rule 2A:4 by simply mailing the petition for appeal to the agency secretary. Therefore, I would affirm the decision of the circuit court holding that

Muse's mailing was insufficient service under Rule 2A:4, which ultimately resulted in the dismissal of the petition for appeal.[6]

---

[6] I reach no conclusion regarding whether dismissal was an appropriate disposition in this case, because Muse did not raise the issue to the circuit court or this Court. In the circuit court, the Board filed a motion to dismiss after Muse requested the clerk to issue service of process and have it properly served. In that motion, the Board argued that an additional 2010 amendment to Rule 2A:4 required Muse to take that action within 30 days after the filing of the notice of appeal, and further argued that the proper remedy for failing to comply with the rule was dismissal. In its final order, the circuit court found that "Muse's appeal was not served upon the agency secretary in a timely manner in accordance with the Rules" and that Muse failed "to take the steps required by [the Rules] for filing and service of a complaint to commence a civil action to have the petition for appeal served with process upon the agency secretary within 30 days after the filing of the notice of appeal." It then concluded that "[t]his failure to comply with a mandatory Rule applicable to and required for perfection of all administrative appeals, prevents this Court from acquiring active jurisdiction over the appeal and subjects the appeal to dismissal." The record before us does not demonstrate that Muse took issue with the circuit court's holding that non-compliance with the Rules required the court to dismiss the action. Moreover, Muse has not raised or argued this specific issue on appeal. Accordingly, under Rules 5A:18 and 5A:20, this Court should not address the issue, and thus I assume for purposes of this appeal that dismissal was the appropriate disposition.